By the Court—Bosworth, Ch. J.
On the evidence presented at the trial, the note in suit must be assumed to be a business note. The evidence tends to show that six, seven or eight hundred dollars of its amount had been received in premiums upon policies issued to the deilndants by the Company. To this extent, at least, it was a valid note in the hands of the Company, without any d.-fense against it. The sale by Mills to Oakes, even though made at a rate of discount exceeding seven cent per atmnrn, would not make the transaction usurious, as the note a vas a business note, made upon a valuable consideration. '
*336 Treating the note as not so indorsed that the plaintiff can, by the rules of the common law, sue in his own name, the important question is, did P. J. Avery acquire such a title to it as would enable him to recover upon it upon the evidence before us, if he were the plaintiff in this action ? If he acquired a valid title to the note, he or his vendee can sue in his own name (under the Code) as being the actual party in interest. The 10th of the by-laws authorized the Finance Committee to settle and audit all,accounts and liabilities of the Company.
.■ As early as the 29th of October, 1855, the Finance Committee audited and allowed the claim of P. J. Avery, for his services and expenses in procuring the charter and amendments to it, at $25,000. A formal resolution to that effect, and of that date, signed by the Finance Committee, was entered on the book of the minutes of its proceedings, (at page 105.) That committee was competent to audit and settle this claim, and was the appropriate committee to make a legal decision in respect to it, which, at the least, would be, prima facie, valid as against the Company.
No action was ever taken or initiated by the Board of Trustees to disapprove of this settlement, much less to rescind or reopen it. None has been taken by the Receiver, if a Receiver has been appointed, nor does it appear by the evidence that he makes any claim to the note.
No testimony was given on the present trial with a view to question the propriety or justice, in whole or in part, of any other'item of credit allowed to P. J. Avery in the settlement of the 21st of April, 1856.
If it be assumed, for the purposes of this trial, that the settlement of the 29th of October, 1855, was valid, then it follows, for aught that has been shown, that the final settlement of the 21st of April, 1856, was just as between Avery and the Company.
At and prior to that time, Avery was possessed of the note in suit, and the fact of such possession, and the manner in which he acquired the note, and his refusal to restore it to the Company, constituted part of their claim against him.
There was not any transfer made or attempted to be made in form by the Finance Committee of the note in suit, and the eight other notes of which Avery had previously possessed himself, *337 and which he insisted upon retaining. In the account with him, as settled on the 21st of April, 1856, they are charged to him under the date of October 81, 1855. It is not an unnatural inference that he had them as early as that date, if not prior thereto. Indeed, the testimony of Mr. Marsh tends to show that Avery had the note at as early a day as that on which it is charged to him.
An action could have been maintained against him for the conversion of these nine notes, or to recover the possession of them. The liability of P. J. Avery for these notes constituted a part of the claim of the Company against him.
On the 21st of April, 1856, all claims, either of Avery against the Company, or of the Company against him, were fully and finally settled. Many of the Trustees were parties to discussions in relation to it, and knew at the time of the terms of the settlement. The settlement was laid before the Board in May, but at how early a day does not appear. Whatever the date, the Trustees, as a Board, were then officially informed of the fact of the settlement and of its details. As a part of the terms of the settlement, P. J. Avery gave his .note, payable thirty days thereafter, to the Company, as, and it was received by the officers acting in its behalf in that matter, “ in full satisfaction and discharge of all and every claim of every name, nature and description, on the part or behalf of the International Insurance Company against the said Perez J. Avery.” This note was for the sum of $4,361.
' Subsequently to this, “ the Company used the. note which Avery gave .for the balance of the account They paid it to the Globe Insurance Company in payment of a debt which they’ owed to the Globe Company.” There was no attempt to prove that this note was not paid at maturity. It matured on the 24th of May, 1856.
Such a use of this note by the u International Insurance Companjq” with a knowledge of the circumstances and agreement under which Avery had given it, and the officers of the Company had accepted it, was a ratification by the Company of the settlement made with Avery on the 21st of April, 1856.
The note thereby became his property, if not previously his. The Company could not compel him to surrender it; certainly’ *338 not without restoring him to the position he was in when the settlement was made.
Proof, uncontradicted and unexplained, that “the Company used the note which Avery gave for the balance of the account that “they paid it to the Globe Insurance Company, in payment of a debt which they owed to the Globe Company,” imports that such transfer was made in a manner authorized by law and the charter and by-laws of the Company. The amount of the note so transferred is $4,361. If a previous resolution of the Board of Directors was essential to a legal and valid transfer of it, the passage of such a resolution authorizing the transfer must be presumed upon such evidence as is above stated.. If the Board of Directors passed such a resolution, then, inasmuch as it appears that some of the Directors knew for what the note was given at the time it was- made, and considering the evidence tending to show that all of them probably knew the nature and particulars of the settlement made with Avery, the act of the Company in transferring the note is such a ratification of such settlement that these defendants- cannot succeed on the mere ground that it was a. nullity as between Avery and the Company. As the case is now presented, that is their only defense; and if that defense is not established, they have no defense.
It must be borne in mind- that no- evidence wa§ given tending to show that any person has preferred any claim against the defendants as makers of the note in question, and that their whole and only defense is that the note in suit “ was taken from* the International Insurance Company by the unauthorized act of one of the officers thereof, who converted the same to his own use, and that the property therein has never passed to* the plaintiff or to any other person.”
The evidence given not only fails to establish the alleged fact on which the defense is rested, but, on the contrary, it proves am ownership of the note by Avery on the 21st of April, 185-6, prima facie valid.
A suit, instituted by the Receiver of the International Insurance Company, on the 31st of October, 1856, (the time this suit was brought,) to recover the possession of this note from Avery, (if he had then held it,) on the ground that it belonged to the Company, could not be maintained on the evidence given *339 in this action, if there were no other evidence in support of such action.
The case of Houghton v. McAuliff et al., (decided in February, 1859,) is unlike the present in this respect. In that case there was no evidence that the Company had ever negotiated the note received from Avery, or had done any act by which they had treated or recognized it as the property of the Company, or as having been accepted with the sanction or by the authority of the Company.
The note, although not indorsed by the Company, could be sold to Avery and made his property; and although not indorsed so that an action would lie, at common law, in his name or in the name of a subsequent holder, yet any such holder, who was the actual owner, could sue upon it, in his own name,, under the Cbde. (§111.)
It cannot be denied that it is competent for such a Company to sue any person who has- wrongfully converted a note which belongs to it. Nor can it be denied that such a suit, followed by a judgment in favor of the Company and payment of the judgment, would vest in the person thus converting it, (after judgment and payment of the judgment,) exclusive property in the note as owner of it.
If he were to sue the1 maker subsequently,, it cannot be possible that the maker could set up, as a defense, that it had been transferred to such plaintiff without the authority of a previous resolution of the Board of Trustees authorizing the transfer.
It was not intended by 1st Revised Statutes, (p. 591, § 8,) to incapacitate a moneyed corporation from settling claims for a conversion of or injury to its property, as natural persons may do; or through the action of such committees or officers as the Company might select forthat purpose; or in any manner which, by the rules of the common law, would be obligatory and conclusive upon both parties.
The time of the transfer by the International Insurance Company to the Globe Company of Avery’s note of the 21st of April, 1856, is not stated. The inference from the testimony given is, that the transfer was made before the maturity of the note, as the evidence is that it was transferred “ in payment of a debt which they owed to the Globe Company.” The testimony is that *340 the International Insurance Company transferred it; and the only presumption admissible is, that .the transfer was regular and in all respects according to law, and valid. The inference must also be, as the contrary was not alleged, that the' note was paid at maturity.
It is difficult to conceive of any act of ratification more explicit and decisive, short of a formal resolution of the Board of Trustees, in terms approving of and confirming the settlement.
We think that the negotiation of this note by the Company, according to law and its charter and by-laws, with a knowledge of the circumstances under which, and of the particulars of the settlement as part of which, it was given and accepted, perfected Avery’s ownership of it.
At all events, it establishes, prima facie, that the title to the note was in Avery on and after the settlement between him and the Company; and more evidence is necessary than was given to prove the fact that the Company was never divested of its title to such note.
[ The title of P. J. Avery to the note being, as between him and ■; the Company, prima facie, absolute and perfect, the title of the present plaintiff is apparently complete.
There is, certainly, no such defect of title as will enable the defendants to succeed on that ground alone. As the case is now presented, the only defense that can be pretended is that the title to the note is still in the Company, or in the Receiver of its property and effects, if one has been appointed. That defense •not having been proved, the dismissal of the complaint was erroneous.
We reverse the judgment, on the grounds that, upon the evidence given, it must be deemed to be proved that the Company ■negotiated the note received from Avery, with a notice of the terms upon which it was given and accepted, and thereby ratified the settlement made between its officers and Avery, and vested :in him a title to the note in suit, prima facie valid; and that no evidence was given to impair the prima facie title thus established.
Judgment reversed and new trial granted, with costs to abide -.the event.