## BLEN v. THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY.

THE president of a private corporation has no authority by virtue merely of his official position to make contracts binding the corporation, except in relation to matters arising in the ordinary course of the business of the corporation.

Where a corporation is engaged in the business of conveying water through ditches for sale to miners, a purchase of additional ditch property with a view of extending the operations of the company is not a matter within the ordinary course of business of such corporation, and its president, as such, has no authority to bind the corporation by a contract for such purchase.

A ratification of a contract made by an agent professing to act therein for the principal, but not having authority for such purpose, must, in order to bind the principal, be made by him with a knowledge of the terms of the contract and the material facts affecting it.

A ratification amounts in itself to presumptive evidence of everything necessary to sustain it. It supposes a knowledge of the thing ratified, and in the case of a contract the inference from the ratification is that its terms were known ; and to rebut this inference, evidence of mistake or misapprehension is required.

N. the president and also one of the trustees of a corporation made on its behalf a written contract for the purchase of certain ditch property, and immediately thereafter participated in a meeting of the trustees, at which he made a written report stating that he had purchased the property, and stating partially, but not fully, the terms of the contract, upon which the trustees by a vote ratified the report and proceedings : *Held*, that the Board must be presumed to have known the terms of the contract which it ratified ; that this presumption could only be overcome by evidence to the contrary, that the facts presented did not show a want of knowledge, but that from the presence and participation of N. actual knowledge by the Board was rather to be inferred.

Whether, when knowledge of facts by the Board of Trustees of a corporation is necessary to the validity of their action, knowledge shown in one of the trustees present and participating in the action will affect the whole Board ?—*Query.*

In order that the vendee may avoid a contract for the purchase of real property on the ground of fraud in the vendor in making the contract, he must repudiate the contract and demand its rescission immediately upon discovering the fraud. The vendee cannot, after discovery of the fraud, remain quietly in possession of the property for a long period of time, and afterwards avoid the contract.

The president of a corporation acting as its general agent, is not, if an interested stockholder, a competent witness for the corporation to testify concerning his acts as agent. The exception to the general rule, by which interested agents are sometimes admitted *ex necessitate* to testify, is, so far as members of a corporation are concerned, confined to keepers and depositaries of corporate documents.

APPEAL from the Eleventh Judicial District.

This case was before the Supreme Court on a former appeal, in

the report of which (15 Cal. 96) the nature of the action is shown and a copy of the instrument sued on set forth, and in the opinion on that appeal a construction was given to this instrument.

Upon the new trial awarded by the Appellate Court, the plaintiff, to prove the execution of the contract by defendants, showed that the purchase was negotiated and the contract signed on behalf of the corporation by James Neal; that Neal was at the time the President, one of the trustees, and managing agent of the corporation; that the contract was signed at Auburn, Placer county, and shortly afterwards Neal proceeded to San Francisco and participated in a meeting of the Board of Trustees. Plaintiff then introduced a copy of the minutes of said meeting, as shown by the books of the company; of a portion of which minutes the following is a copy:

" At a meeting of the Trustees of the Bear River and Auburn Mining Company, held at the Merchants' Exchange in San Francisco on the evening of the twenty-ninth of February, A. D. 1856, there were present James Neall, President, Frederick Billings, J. B. Thomas, G. W. Crofts, R. E. Brewster, and Amos Noyes, Directors.

" Mr. Neall, the President, having visited the work, made a report upon the condition of the same; which, upon motion of Mr. Billings, was accepted and ordered to be placed upon record. Report. ' To the Trustees of the B. R. and A. W. and M. Co. Gentlemen, * * * * * * And I further report, that I have purchased for the company a certain ditch property known as the Tracy Ravine and Mississippi Bar ditch, or Blynn's ditch, together with a claim of about $2,700, bearing interest at the rate of three per cent per month till paid, on a certain ditch known as the ' Beal's Bar ditch,' by means of which we are enabled to appear in the market with our water on Union Hill, Beal's Bar, Rose Springs, and Mississippi Bar; which water, from the points taken on Miners' Ravine, would otherwise be lost to us or used to our disadvantage. For the last mentioned ditch and claim I paid $2,500 in cash, and agree to pay the further sum of twelve thousand dollars ($12,000) out of the first net receipts of the said Tracy's Ravine and Mississippi Bar ditch.'

' In making these purchases I am aware of having exceeded my authority given me by the Board of Trustees; but as the cash payments have all been provided without using any funds 'of the company, with the exception of the one hundred dollars paid on account of the ' Georgia ditch,' it will be a very easy matter for the company to have matters righted in case it does not ratify my action, as I feel perfectly satisfied to assume the purchase or purchases on individual account, should the Company think proper to decline them. J. NEALL.'

" On motion of R. E. Brewster, Esq. the report and proceedings were ratified and approved by unanimous vote of the trustees present."

Plaintiff further showed that the $2,500 cash payment mentioned in the contract was made to plaintiff at the time of the execution of the contract, and that shortly after the meeting of the trustees a deed to defendant was executed by plaintiff for the Tracy Ravine and Mississippi Bar ditch; that immediately after the making of the contract the defendant took possession of all the ditches and property mentioned in it, and has retained possession up to the present time; that there was no offer to rescind the contract, and no repudiation of it attempted, until about one month after the commencement of this action; that immediately upon taking possession the agents of defendant were instructed to furnish water to the ditches sold by plaintiff in accordance with the provisions of the contract, and that the agents did furnish some water, but irregularly and of bad quality.

To sustain the allegations of fraud in the making of the contract, by which it might be avoided, the defendants proved that at the time of signing the contract, and pending the negotiations, Blen made certain statements to Neall and others of defendant's agents as to the grade of the ditches which he was selling, as to the sales of water which had been made from them by himself, and the probable amount that could be sold from them if supplied with water; also as to the priority of these ditches to the natural waters of the streams by which they were supplied, and particularly that the Beal's Bar ditch had priority of right over a ditch known as the

Union House ditch in the waters of Miners' Ravine.   Evidence was then introduced by defendant tending to show that these statements were untrue.   From plaintiff's evidence, it appears that the agents of defendant made full examination of the property before the purchase ; that they became fully acquainted with its defects, with its capacity to carry water, and with the state of the markets, shortly after the purchase, and that they made no offer to rescind the contract after such discovery for the period of two years, nor until this action was commenced.

Defendant further showed that about one year after the purchase, the owners of the " Union House ditch," leading from Miners' Ravine, commenced an action against the plaintiff and defendant in this action for damages on account of diversion of the waters of said ravine by the Beal's Bar ditch mentioned in the contract of purchase ; in which action, after a trial by jury, a judgment was obtained establishing the prior right of the " Union House ditch" to the use of the waters of said ravine, and for damages in the sum of $3,000 and upwards for the diversion of said water ; which judgment the defendant in this action had been compelled to pay.

On the trial, the defendant called James Neall as a witness, who on his *voir dire* stated that in 1856, at the time the contract sued on was made, he was the owner of two shares of stock in the corporation, which stood in his name upon the books of the company ; that in 1855 he was the owner of one hundred and twenty-six shares of defendant's stock ; that in that year he borrowed from J. R. Crandall about $4,000, and at the same time assigned one hundred and twenty-four shares of his stock to Crandall, taking from him an agreement that upon the payment of the $4,000 he, Crandall, would sell and transfer the stock to him, Neal ; that about three months ago Crandall had commenced suit against witness to recover the $4,000, and foreclose a mortgage upon the stock so assigned, upon the ground that the transfer was made to secure the repayment of the loan ; which suit was still pending and undetermined.

Witness further stated that he considered his transaction with Crandall as a sale of his stock with power to repurchase, and not as a mortgage to secure a loan ; that since this trial commenced he had assigned the two shares of stock standing in his name on the

books of the company, and had received an indemnifying bond and some money ; which bond and money were, in his opinion, ample indemnity against any individual liability for costs or damages to which he might be subject on account of his former ownership of the two shares of stock recently assigned by him.

The plaintiff objected to the witness as incompetent, and the Court sustained the objection, to which defendant excepted.

The second instruction given at request of plaintiff is as follows : " That when persons are negotiating about a sale of real estate, where the property is open to the inspection of both parties, any representation made by the vendor concerning a matter which is open to the inspection of the vendee, and of which he has the same opportunity as the vendor to ascertain the truth, is not fraudulent."

To the giving of which instruction defendant excepted.

The jury rendered a verdict for plaintiff for $14,950, and judgment was rendered accordingly.   Defendant moved for a new trial, which was denied ; and from this order and the judgment the appeal is taken.

*S. Heydenfeldt*, for Appellants.

I.   A ratification, to be binding, must be with a full knowledge of the facts or terms of the contract.   (*The P. D. and N. S. M. Co.* v. *Dandridge*, 8 Gill. & J. 248 ; *Brown* v. *Billings*, 22 Vt. 9 ; *Copeland* v. *Mercantile Ins. Co.*, 6 Pick. 203 ; *Blevins* v. *Pope*, 7 Ala. 371 ; *Trott* v. *Warren*, 11 Maine R. 234 ; *Thorndike* v. *Godfrey*, 3 Greenleaf, 429 ; *Billings* v. *Morrow*, 7 Cal. 171 ; *Marziou* v. *Pioche*, 8 Cal. 534 ; Story on Agency, sec. 243, note 6 ; *Owens* v. *Hull*, 9 Peters, 607.)

And for want of proof of ratification nonsuit should have been been granted.   (*Nixon* v. *Palmer*, 4 Seldon, 398.)

All the proof in relation to ratification was in writing, and the effect of the writings should have been construed by the Court and not submitted to the jury.   (*Fairbanks* v. *Woodhouse*, 6 Cal. 433.)

A principal is bound by the representations of his agent, when they form part of the *res gestae*.   (*Stawbridge* v. *Spann*, 8 Ala. 821.)

Then where one acts without power, and seeks the ratification of

the principal, must not the principal be limited to the representation of the contract as made ?

When the apparent act of ratification is done in the confidence that the agent has obeyed orders, it is no ratification. (*Bell* v. *Cunningham*, 3 Peters. 69.

And where the principal ratifies a contract under a misrepresentation from his agent, he is not bound. (*Horsefall* v. *Fauntleroy*, 10 B. & Cress. 755.)

The paper containing the agreement was executed by Neall alone, on behalf of the corporation; it was delivered to plaintiff, and was never in the possession of the corporation, and never seen by its trustees or responsible managers. The corporation relied alone upon Neall's relation of what the contract was. Their subsequent acts in relation to the property purchased were strictly consistent with the contract, as reported by Neall and ratified by the corporation.

These acts, therefore, cannot be invoked as an implied ratification of a contract about which the corporation was in total ignorance.

The contract should not have been admitted in evidence, because it was not under the seal of the corporation, nor under seal in any form.

A corporation aggregate expresses its will wherever strangers are concerned by its common seal; and in general nothing of importance can be done by a corporation except under its common seal. (Grant on Corporations, 55.)

An entry in the books of a corporation of the terms of an agreement entered into by them does not bind, not being under seal. *Carter* v. *Dean of Ely*, 7 Sim. 211.

In the case of *Smith* v. *Eureka Flour Mill*, (6 Cal. 6) it was held that corporations might execute promissory notes not under seal, because this was not one of their express powers, but a mere incident to those powers. This differs essentially from the contract in question in this case. Here was an agreement which strictly belonged to the express powers, and was essential in aid of those powers.

II.  If the plaintiff made untrue representations to defendants, knowing them to be untrue, with intention to mislead and deceive,

Blen *v.* Bear River and Auburn W. and M. Co.

and did mislead and deceive, the contract is void for fraud. (*Bost-wick* v. *Lewis*, 1 Day, 255 ; *Sherwood* v. *Salmon*, 5 Day, 439 ; *Burrowes* v. *Locke*, 10 Vesey, 470 ; *Livingston* v. *Peru Iron Works*, 2 Paige, 390 ; *McFerran* v. *Taylor*, 3 Cranch, 270 ; *Bradley* v. *Bosley*, 1 Barbour Ch. R. 125 ; *Parham* v. *Randolph*, 4 How. (Miss.) 435 ; *Pringle* v. *Samuel*, 1 Litt. 46 ; *Fenton* v. *Brown*, 14 Vesey, 144 ; 2 Kent, 489, and notes.)

That this ground of appeal is cogent and not abstract, see pleadings and evidence.

III.   The second instruction given for plaintiff was abstract, and calculated to mislead the jury.

The representations of Blen complained of in defense were in relation to " priority of right to the water, amount of sales, market for sales," etc., and did not involve anything which was open to the inspection of both parties, or concerning which both parties had the same opportunity to ascertain the truth. (*Vanly* v. *Campbell*, 8 Mo. 227 ; *Powell* v. *Bradlee & Co.*, 9 Gill. & Johns. 279 ; *McIsaacs* v. *Hobbs*, 8 Dana, 272 ; *Reed* v. *Greathouse*, 7 Munroe, 588.)

If erroneous instructions are given, the error is not cured by the fact that correct instructions are also given. (*Hickman* v. *Griffin*, 6 Mo. 37 ; *Jones* v. *Talbot*, 4 Mo. 279.)

IV.   The witness Neall was improperly excluded. His interest was both remote and contingent, and he was fully indemnified to his own satisfaction. (*Collins* v. *McCremmer*, 3 Martin, 166 ; *Manchester Iron Co.* v. *Sweeting*, 10 Wend. 162 ; *Chaffee* v. *Thomas*, 7 Cow. 358 ; *Alten* v. *Hawks*, 13 Pick. 79 ; *Beekley* v. *Freeman*, 15 Pick. 468 ; *Dellone* v. *Rehmer*, 4 Watts, 9 ; *Stall* v. *Banks*, 18 Wend. 466 ; 3 Phillips on Ev. (new ed.) 126, 128, note.)

V.   The judgment of the American Water Company against defendants ought to have been taken into consideration, as showing a partial failure of the consideration of the purchase.

The purchase was of a ditch, represented to have priority of right to the water.

The deed need not show all the consideration, or all of the elements going to invite the purchase.

It is well established that a partial failure is a good defense.

(*Withers* v. *Green*, S. C. U. S. 220; *Bradley* v. *Bosley*, 1 Barbour Ch. R. 125; *Parham* v. *Randolph*, 4 How. (Miss.) 435; *Sherwood* v. *Salmon*, 5 Day, 439.)

VI. The amount received by Blen, as admitted by bill, and the payment made to him, as shown by the proofs, establish that the amount of the verdict is excessive.

*Tuttle & Hillyer*, for Respondent.

I. The President of the corporation had authority to make the contract and bind the corporation, and no ratification was necessary.

The President of a corporation is its general agent. Neall was President, and with the full knowledge of the company acted as general agent. He was a member of the Board of Trustees; was entrusted with the negotiation of this business. He assumed to plaintiff to have full power to contract. If Neall had private instructions limiting his authority, (as his report says) he did not communicate them to plaintiff, who had a right to treat with him upon the apparent authority conferred upon him by the corporation. The purchase was within the scope of the legitimate business of the corporation, and its general agent might have bound it by an implied contract in such a purchase—*a fortiori* by an express one. This is the rule in regard to private corporations. (*Shafer* v. *Bear R. and A. W. and M. Co.*, 10 Cal. 396; *Bank of Columbus* v. *Patterson*, 7 Cranch, 299; *Trent Bank* v. *Woodruff*, 1 Green (N. J.) Ch. 128; *Mott* v. *Hicks*, 1 Cowen's Rep. 532–33–42; *Bank of U. S.* v. *Dandridge*, 12 Wheaton, 70; *Ross* v. *Houston*, 25 Mississippi, 591; *Milledge* v. *Boston Co.*, 5 Cushing, 177; *Boggs* v. *Lancaster Bank*, 7 Serg. & Watts, 333; *Porter* v. *Bank of R.*, 19 Vermont, 425.)

II. The knowledge of one of a Board of Directors, derived while acting in his capacity of Director upon the business of the company, affects the corporation acting through such trustee in conjunction with others on the same subject matter. (*Bank of U. S.* v. *Davis*, 2 Hill. 461; *Fulton Bank* v. *Benedict*, 1 Hall's Rep. 557; *Fulton Bank* v. *Canal Co.*, 4 Paige, 136–7–3; Story on Agency, sec. 140; A. and A. on Corporations, sec. 305.)

III.   If Neall, or Neal, and Crandall had authority from the Board to negotiate a contract without formally concluding it, knowledge obtained by them pending the negotiations was binding on the corporation.   (See cases above cited.)

IV.   Where knowledge is to be imparted or notice given, it is not necessary that all the details should be communicated.   It is sufficient that the main points be stated, enough to put the party upon inquiry as to details.   (*Porter* v. *Bank of Rutland*, 19 Vermont, 425 ; 1 Hall's Rep. 558 ; *Blaisdell* v. *Stevens*, 16 Vermont's Rep. 186–7 ; *Anderson* v. *Allen*, 4 John's Rep. 343 ; Story's Eq. Jur., Vol. 1, secs. 400 & 400 A.)

In this case, every fact communicated by Neall in his written statement is true.

It differs from all the cases cited by appellant in the absence of any deception or intentional concealment.   The statement by Neall shows that a large portion of the purchase money was to be paid out of the proceeds of sales of water from the ditches, after payment of expenses, and that Bear River water was to be used in the ditches.   ' No respectable business man would suppose that $12,500 was to be paid out of the proceeds of property, unless some arrangement was made by which it was made certain, or probable, that proceeds would be realized.   An obligation of some kind on the part of the company, by which the mode of using the property was fixed, was clearly suggested by the terms stated.   The impulse to further inquiry seems almost irresistible.   If the Directors chose to remain ignorant of this ; if they trusted the details to the President, they cannot complain of their voluntary ignorance, or of the use of authority thus committed to the President.

V.   A ratification being shown of the contract made by Neall, it will be presumed that the Board had knowledge of that which they ratified, and the burthen of proof is upon defendant to show that the Board did not know those facts which their action implies that they did know ; and besides, the evidence is sufficient to establish the fact that the Trustees did have actual knowledge of all the terms of the contract at the time of voting to ratify it ; and the discretion of the Court below in refusing the motion for new trial will not be revised, unless there is no evidence to support the verdict.   (*Baxter* v. *McKinley*, 16 Cal. 76.)

VI. The retention of possession for two years after knowledge of the alleged fraud in making the contract, without complaint or offer to rescind, is a conclusive bar to the present claim of defendant to avoid the contract on account of such fraud. (*Fratt* v. *Fiske*, 17 Cal. 380; *Kinney* v. *Osborne*, 14 Id. 112; *State* v. *McCauley*, 15 Id. 458; 1 Smith's Leading Cases, 253; 10 Sergeant & Rawle, 290; 14 Id. 159; Story's Eq. Jur. 20–204.)

VII. The interest of Neall was neither remote nor contingent, but direct and certain. He admits to owning two shares of stock, and his testimony shows that both at the time the contract was made, and at the time of the trial, he owned one hundred and twenty-four shares, which he had mortgaged to Crandall; being a stockholder, he was disqualified. (*McKneely* v. *York Mining Co.*, 6 Cal. 80; *Mok. Hill Co.* v. *Woodbury*, 14 Id. 265.)

VIII. His competency was not restored by receiving money, and a bond as indemnity against his liability for costs and damage as a stockholder at the time the action was commenced. (*Scott* v. *Loyd*, 12 Pet. 145; *Campbell* v. *Galbreath*, 5 Watts, 424; *Clement* v. *Bixlen*, 3 Id. 248; *Hook* v. *Hoaks*, 5 Id. 80; Kentucky Rep. 1 & 2 A. K. Marsh, 839; *Ashly* v. *Patton*, 3 Levy & Rawle, 300; *Gebbert* v. *Schmidle*, 15 Id. 235; *Benjamin* v. *Smith*, 12 Wendell, 404; 14 Cal. [above cited] 265; *Brown* v. *Lynch*, 1 Paige's Ch. Rep. 156; *Pond* v. *Hartwell*, 17 Pick. 272; 1 Greenleaf's Ev., sec. 420.)

IX. The judgment in the case of American Water Co. against defendant was obtained in an action of trespass for diversion of water. It was introduced as evidence by defendant, and used for all purposes, except that it was not allowed to be used as a set-off against the demand of plaintiff.

A judgment in trespass obtained by a third person is no measure of the damage sustained by false representations at the time of sale; to wit, the difference between the actual value and the value as represented. (See case in 1 Barb. cited by appellant.)

COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

The plaintiff sues to recover a sum of money alleged to be due

him on a sale to the defendant of certain ditch property. The defendant is a corporation, and the contract for the property was made on its behalf by one Neall, who was its President, and a member of the Board of Trustees. The answer puts in issue the authority of Neall to make the contract, and sets up certain matters of fraud and misrepresentation as destroying its validity. These constitute the principal points of inquiry in the case, and we shall consider them without reference to the particular exceptions taken at the trial.

On the question of authority, the plaintiff relies upon the general powers of Neall as President, and upon a ratification by the Board of Trustees, and various acts showing an acceptance of the contract. It is clear that Neall had no such authority merely as President, for his powers in that capacity only extended to matters arising in the ordinary course of the business of the corporation. Outside of these matters he had no power to bind the corporate body, and he was not authorized to make contracts for the purchase of property, unless required in the usual course of business. The property purchased was for the use of the corporation, but the object in view was to extend its operations, and the purchase was of no utility for any other purpose.

The evidence of a ratification by the Board of Trustees is drawn from the record of its proceedings, and it is contended that taking the contract and the record together, no ratification appears. It is claimed that the Board acted upon information communicated by Neall in a written report upon the subject, some of the provisions of the contract being omitted in the report. The report does not profess to give the details of the contract in every respect, but states generally the fact of the purchase, and the price to be paid; and points out the advantages to result from the transaction. The record recites that the Board, by an unanimous vote, ratified the "report and proceedings," Neall being present, participating in the ratification. The position taken is that the Board based its action solely upon the report, and was not sufficiently informed of the terms of the contract to make the ratification binding. In other words, that the Board acted in the matter without a knowledge of the facts, and that a ratification under such circumstances is not

valid and cannot be enforced.   The rule invoked is undoubtedly correct, but we do not consider the case a proper one for its application, as in our opinion the point raised rests upon a mere assumption.   As Neall was present, it is hardly to be supposed that the report was received and voted upon in silence, for the matter was of too much importance to be disposed of in that manner.   The natural presumption is that it was fully considered, and the particulars inquired into and explained, and the idea that this was not done is certainly at variance with the usual mode of conducting business.   If it were not for the report, no doubt could possibly be entertained upon the subject, for the ratification amounts in itself to presumptive evidence of everything required to sustain it.   A ratification supposes a knowledge of the thing ratified, and in the case of a contract the inference from the ratification is that its provisions were known.   When the ratification is proved, this inference necessarily follows, and if there was any mistake or misapprehension, that fact must be shown.   There is no evidence of any mistake in this case, and we cannot infer that the Board knew nothing of the contract except through the medium of the report.   The circumstances indicate a different state of facts, for it is unreasonable to suppose that the Board, with Neall at its head, confirmed the contract in ignorance of its terms.   It cannot be said that the contract was not included in the ratification, for the " proceedings " were ratified as well as the report, and the " proceedings " embraced the contract. It amounted to an express ratification of the contract; and the mere fact that the report does not state all its provisions, is no evidence that the Board was ignorant upon the subject.   In this view, it is unnecessary to inquire whether the knowledge of Neall was of itself sufficient to bind the corporation; but we are inclined to the opinion that it was not.   A similar question has occasionally arisen in other States, but the decisions are by no means harmonious ; nor is there much difference in the weight of authority on each side.   The subject is mentioned by Judge Story in his work on the Law of Agency, but he merely refers to it, and arrives at no satisfactory conclusion. He cites the cases, however, and says that upon principle, notice to one trustee, unknown to the other members of the Board, ought not to bind the corporation.

The subsequent acts relied on are the acceptance of a deed, and the taking possession of and using the property; all of which, however, are consistent with the idea of a ratification by mistake. If it were shown that the Board really acted under a misapprehension of the contract, we should be disposed to regard the subsequent acts as attributable to the same error. If it appeared that the contract had been ratified by mistake, the presumption would be that the mistake continued throughout; but this, as we have stated, does not appear.

The fraud complained of was fully investigated by the jury, and we are unable to discover any error for which the verdict should be set aside. The evidence was submitted under proper instructions from the Court, and it would require a very clear showing in such a case to induce us to interfere. If any fraud was committed, the fact was known long prior to the commencement of this suit, and it is too late now to avoid the contract on that ground. The offer to rescind should have been made as soon as the fraud was discovered, and the defendant could not remain in possession, quietly enjoying the property, and afterwards repudiate the contract. This is also an answer to the point taken as to a partial failure of the consideration, except so far as such failure is relied upon by way of recoupment. In this respect, however, we think the defense entirely fails, as the defendant undoubtedly received all that was contracted for. There was no breach of warranty, and there is no evidence from which fraud is necessarily to be inferred, and the right to recoup has no foundation to rest upon. It is said that the purchase was of a ditch represented to have priority of right to the water, and that this representation was untrue and intended to mislead. The inference from the evidence is that the plaintiff made it in good faith, believing it to be true, and it is at least doubtful whether even the effect was to deceive. The matter was open to the investigation of both parties, and there is some evidence showing that the purchase was made with knowledge that the priority was disputed. We regard the allegations of fraud, however, as really unworthy of consideration, for the evidence is wholly insufficient to justify the charge of intentional misrepresentation.

We have examined the additional points made, and do not regard

any of them as well taken; nor are they of sufficient importance to entitle them to special notice. The only point about which we have entertained a doubt is the rejection of Neall as a witness for the defendant, but we have come to the conclusion that he was properly rejected. We were disposed to regard him as standing in the position of an ordinary agent, and to hold his testimony admissible *ex necessitate*, as in other cases of agency, but we are satisfied that his interest disqualified him. The exception to the general rule in such cases, so far as the members of a corporation are concerned, seems to be confined to keepers and depositaries of corporate documents. Members acting for the corporation in ordinary matters of business are not included, and when interested they are incompetent to testify. The cases of *McAuley* v. *The York Mining Co.* (6 Cal. 80) and *Mokelumne Hill Canal Co.* v. *Woodbury* (14 Cal. 265) settle the question of the sufficiency of the interest to disqualify.

The judgment is affirmed.