# N. Y. SUPERIOR COURT.

CHARLES H. DABNEY, JOHN PIERPONT MORGAN, and JAMES I. GOODWIN, plaintiffs and respondents, agt. SIMON STEVENS, EDWARD LEARNED, COURTLANDT P. DIXON and WILLIAM L. PALMER, impleaded with EDWIN L. SIMPSON, defendants and appellants.

An exception taken at the trial by the respondent is improperly incorporated into the printed case, unless its insertion can be justified by the existence of a special reason therefor.

A person dealing with an officer of a corporation, whose duties are regulated by the by-laws, is chargeable with notice of his authority, and of the limitations and restrictions upon it, contained in the act of incorporation and by-laws.

Where neither the president, nor the secretary of the manufacturing company, nor both combined, possessed the power to issue drafts or to negotiate drafts drawn by them in the name of the company, the latter cannot be held liable, except upon proof.

    1. That a general or particular authority for that purpose was conferred by the board of trustees, upon the president and secretary, or either of them, or

    2. That the conduct of the company was such as to create a well founded belief, that such general or particular authority had been delegated, or

    3. That the acts of such agents, although unauthorized, were subsequently ratified by the board of trustees.

Such delegation of authority or subsequent ratification may be either express or implied.

But a subsequent ratification will not be inferred in the absence of proof, showing that the board of trustees had notice or knowledge of the unauthorized acts of the company's agents.

The liability imposed by statute upon trustees of manufacturing companies, for neglecting to make and file an annual report, is in the nature of a penalty for misconduct in office. The penalty imposed is the debt of the corporation.

In an action of this description the burden of proof is upon the plaintiff to establish that the debt was contracted by the corporation.

*General Term, March,* 1870.

*Before* MONELL, McCUNN, *and* FREEDMAN, *JJ.*

THIS action was brought against the defendants as trustees of the Simpson Waterproof Manufacturing Company,

upon an alleged liability incurred by them in consequence of their failure to make, file and publish the annual report required by law.

The answers of the defendants, as amended on the trial, put in issue all the material allegations of the complaint.

The issues were referred to a referee to hear, try and determine the same, who found as follows :

I find as a matter of fact that on the first day of February, 1864, the above-named defendants filed in the office of the clerk of the city and county of New York a certificate or acknowledgment, under chapter 40 of the Laws of the state of New York, passed February 17, 1848, and the laws amendatory thereof, and also filed a duplicate of said certificate in the office of the secretary of state of New York, as required by said laws, whereby the said defendants became a corporation in fact and in name, by the name of " The Simpson Waterproof Manufacturing Company," the name stated in said certificate as the title thereof, with the usual powers, rights, and duties conferred in and by the acts aforesaid.

That in and by said certificate, it was certified among other things, that the principal part of the business of said company was to be carried on in said city and county of New York (where the chief office of the said company was to be established), and also the corporated name of said company, the objects of its formation, the terms of its existence, and the number of shares of which the stock should consist, and also that the number of the trustees to manage the concerns of said company should be five, and that the names of those who should manage the concerns for the first year were, Edward L. Simpson, Simon Stevens, Edward Learned, Courtlandt P. Dixon and William Palmer, the defendants above named, and the persons who signed and acknowledged said certificate. That no election of trustees ever was held, and the above-named defendants, never having resigned or retired from their said trusteeship, continued to be and were the

trustees of said company from its formation until after the time that the indebtedness hereinafter mentioned was incurred.

That between the 13th day of March, 1865, and the 5th day of June in the same year, the plaintiffs in the action, at the request of the president and secretary of the said company, accepted certain *drafts drawn by said company* upon the plaintiffs for the amounts, and upon the terms and conditions specified and set forth in the complaint in this action, and especially upon the condition that the said company should place said plaintiffs "in cash funds to meet said acceptances at maturity."

That the said drafts so accepted by the said plaintiffs were duly paid by them as they became due.

That the said company put the said plaintiffs in funds to meet the said four drafts as they became due, except the draft dated June 5, 1865, drawn by said company for $4,000, which became due on the 7th day of August, 1865, which last-mentioned draft the said company failed to pay, or to put the plaintiffs in funds to pay according to said agreement, except the sum of $985, and the said draft being paid by the said plaintiffs as aforesaid, a balance of $3,115 became and was due to them from defendants on the 1st day of September, 1865, no part of which has ever been paid to the plaintiffs.

That the said company failed to make a report within twenty days of the 1st day of January, 1865, or within twenty days of the 1st day of January, 1866, and publish the same in a newspaper published in the said city of New York, stating the amount of its capital, and the proportion actually paid in, and the amount of its existing debts, and signed by the president and a majority of its trustees, and verified by the oath of the president and secretary, and file the same in the office of the clerk of the city and county of New York, as required by the acts aforesaid.

And I find as matters of law that on the 1st day of Sep-

tember, 1865, the said company were justly indebted to the plaintiffs for the said sum of $3,115.

That in consequence of the failure of said company to make and publish and file the reports aforesaid required by section 12 of said act, within twenty days from the 1st day of January, 1865, and from the 1st day of January, 1866, the said defendants as such trustees became and are jointly and severally liable for all debts of said company existing at the time said reports should have been made, published, and filed respectively, or which have been contracted since that time, including the said indebtedness so due to the plaintiffs as aforesaid, and that the plaintiffs are entitled to judgment against said defendants for said sum of $3,115 with interest thereon from the 1st day of September, 1865, amounting to the sum of $933 97, making in all the sum of $4,048 97, and the costs of this action.

The defendants duly excepted to the referee's findings of fact and conclusions of law.

Judgment was entered in conformity with the findings of law of the referee, and the defendants, Learned, Dixon, Palmer, and Stevens, appealed.

WILLIAM D. WHITE, *counsel for plaintiffs.*

ALBERT STICKNEY, *counsel for defendants Learned, Dixon and Palmer.*

DUDLEY FIELD, *counsel for defendant Stevens.*

*By the court,* FREEDMAN, J.—The appeal papers submitted in this case have been prepared in a very objectionable form. They contain not only all the exceptions taken by the four appellants, which are very numerous, but also the exceptions of the respondents, which are equally numerous. Such practice, being calculated to mislead, imposes upon the court at general term much additional and superfluous labor. This should not be done. An exception taken during the progress of a trial by a party who finally succeeded, is

Dabney agt. Stevens.

improperly incorporated into the printed case unless its insertion can be justiefid by the existence of a special reason therefor. I have, however, carefully examined the whole case as submitted, and the examination thus made has led me to the conclusion that the evidence was insufficient to authorize the referee to find as matters of fact that the drafts in question were drawn by the company, upon the condition, among others, that the company should place the plaintiffs in cash funds to meet their acceptances at maturity, and that the company put the plaintiffs in funds to meet the four drafts as they became due, except the draft dated June 5, 1865, for $4,000, which became due on the 7th day of August, 1865, which last-mentioned draft the said company failed to pay, or to put the plaintiffs in funds to pay, except the sum of $985, &c. If these findings of fact cannot be sustained, it follows as a necessary consequence that the referee's conclusions of law, based upon these facts, must also fail.

It has been repeatedly held that the liability imposed by the statute upon trustees of manufacturing companies for neglecting to make and file an annual report, is in the nature of a penalty for misconduct in office. The penalty imposed is the debt of the corporation (*Bird* agt. *Hayden*, 2 *Abb.*, *N. S.*, 61; *McHarg* agt. *Eastman*, 35 *How.*, 205; *Merchants' Bank* agt. *Bliss*, 35 *N. Y.*, 412, *affirming* 1 *Robt.*, 391).

Plaintiffs should be held, therefore, to strict proof of their case, and the burden of proof was upon them to establish that the debt was contracted by the corporation.

A corporation aggregate, being an artificial body—an imaginary person of a law, so to speak—is, from its nature, incapable of doing any act, except through agents, to whom is given by its fundamental law, or in pursuance of it, every power of action it is capable of possessing or exercising. The acts of such agents, in order to be binding upon the corporation, must, as a general rule, be done in the line of

such agency, and within the limits of the authority con-
ferred on them (*Hartford Bank* agt. *Hart*, 3 *Day*, 493 ;
*Wyman* agt. *Hallowell and Augusta Bank*, 14 *Mass.*, 62 ;
*Bellows* agt. *Same*, 2 *Mass.*, 31 ; *Salem* agt. *Gloucester Bank*,
17 *Mass.*, 1).

Thus an agreement of the president of a private corpor-
ation was held not to be evidence against the corporation
without something from which it could be inferred to have
been within the scope of his authority (*Pa. Supreme Court*,
*Farmers' Bank of Bucks Co.* agt. *McKee*, 2 *Pa. St.*, 318).

The statute under which the manufacturing corporations
may be organized places the management of their property
and concerns in a board of trustees to be chosen for that pur-
pose. This power is exclusive in its character. It is one
of the fundamental conditions into which the corporators
enter by becoming members of the corporation, that its
concerns shall be managed in the manner prescribed by the
act of incorporation. From this no essential departure can
be made (*McCullough* agt. *Moss*, 5 *Denio*, 575). The cor-
poration, therefore, can only act by and through its trustees.
The duties and powers of the president, who must be one
of the trustees, and of such subordinate officers as the cor-
poration may, by its by-laws, recognize, are generally regu-
lated by the by-laws, and persons dealing with such presi-
dent or any such officer are chargeable with notice of his
authority, and of the limitations and restrictions upon it
contained in the act of incorporation and by-laws. There
is no grant of general powers in the name, by which an offi-
cer may be designated, whether he be called superintend-
ent or president or general manager (*Adriance* agt. *Roome*,
52 *Barb.*, 399).

In the case at bar, the by-laws of the Simpson Water-
proof Manufacturing Company were adopted at the first
meeting of the board of trustees. They provided that the
officers of the company shall consist of a president, a secretary
and a treasurer. The respective duties of these officers

were also clearly defined. It was made the duty of the president to preside at all meetings of the stockholders and trustees, and to oversee, *under the direction of the trustees,* the manufacturing, selling, and all other operations of the company and its subordinate officers. It was made the duty of the treasurer to keep the moneys of the company, to deposit them in a bank designated by the trustees, and to disburse them *under the direction of the trustees;* but it was expressly provided that no money should be paid unless in pursance of a vote of the trustees and upon checks signed by the treasurer and countersigned by the president. The duty of the secretary was defined to be, to keep all the books and papers of the company, and to record the doings of the trustees. Neither the president, therefore, nor the secretary, nor both combined, possessed the power to bind the company by making the drafts in question or negotiating with the plaintiffs for their acceptance, except upon proof that the board of trustees had conferred either a general authority to borrow on the company's credit upon them or either of them, or a particular authority in respect to the drafts in question, or that the conduct of the company was such as to create a well-founded belief in the plaintiffs that such general or special power had been delegated, or that the acts of said agents, although unauthorized, were subsequently ratified by the board of trustees. Such delegation of prior, general or special, authority, or such subsequent ratification, might be either express or implied, but, in order to bind the company, action of some kind, in some shape or other, on the part of the trustees was indispensably necessary.

Thus it has been held, that whenever a corporation have board of directors, under whose general supervision and control the business of the corporation is transacted, an agent, who attends to the daily routine of business and its management under all ordinary circumstances, has no authority, by virtue merely of his agency, to make a con-

tract creating a general lien upon the personal property of the company, to secure money borrowed, but such contract must receive the approval of the board of directors.   A general agent might be deemed vested with power to make such contracts, when necessary, in the intervals of corporate meetings, if the corporation had no other board of control but the agent; but if they have such a board, under whose control the agent was acting, such a contract by the agent without their sanction is not binding (*Vermont Supreme Court*, 1848; *Whitwell* agt. *Warner*, 20 *Vt.*, 425).

The evidence given on both sides in the case at bar presents no conflict of any consequence. It shows that the drafts were drawn by the secretary, simply because the president ordered him so to do, and that thereupon they were negotiated by the president for his private benefit; that neither of the defendants, Learned, Dixon, or Palmer, had any knowledge of any of the transactions which took place between plaintiffs and the president and secretary, or either of them, prior to the commencement of this action, and that the entries regarding the said drafts and the account with the plaintiffs were not made on the books of the company, until after the expiration of a year or more after the last transaction.   It also appeared that plaintiffs, who had had previous private dealings with Simon Stevens, the president, but none with the company, accepted the drafts on the faith of the personal guarantee of said Stevens, executed at the time and without inquiry as to his authority to bind the company, and that the funds received by plaintiffs to be applied in payment of the said drafts were furnished by Stevens for that purpose without any knowledge on the part of his co-trustees.   Stevens himself testified that he had no authority from the company to borrow money, or to give the drafts, or to make the contract with the plaintiffs, which he did make; that he never informed his co-trustees of his transactions with the plaintiffs until some months after the maturity of the last draft; that he originally advanced

Dabney agt. Stevens.

about $30,000 to the company, a great portion of which he repaid to himself out of the proceeds of these drafts. Upon this uncontroverted state of facts it seems clear that, within the principles decided in the case of *Claflin* agt. *The Farmers' and Citizens' Bank* (25 *N. Y.*, 293), the acts of president Stevens were wholly unauthorized and therefore void as against the company. In the case last cited it was held that the power conferred upon the president of a bank by the by-laws to certify checks did not authorize him to certify his own checks; that such act on his part was characterized as a palpable excess of authority, and it was said that any person taking the paper was bound to inquire as to the power of the agent so to contract. The same rule was asserted in the case of *Gould* agt. *The Town of Sterling*, and *Harin* agt. *the Town of Genoa* (23 *N. Y.*, 452, 464). In *Beers* agt. *Phœnix Glass Co.* (14 *Barb.*, 358), the facts proved warranted the inference that the transactions of the secretary, who also acted as treasurer, were directly authorized. The same remark applies to the case of the *Bank of Genesee* agt. *Patchin Bank* (13 *N. Y.*, 316); and *Aiken* agt. *Blanchard* (32 *Barb.*, 527) was decided purely upon a question of evidence. The three last-named cases, therefore, do not aid the plaintiffs.

The evidence, in my judgment, is also insufficient to show a subsequent ratification, either express or implied. The president and secretary certainly were not competent to ratify their own unauthorized acts (*Mich. Supreme Ct.*, *Hotchin* agt. *Kent*, 8 *Mich.*, 526). The company, it is true, might have done so. No express vote seems to be necessary to a ratification by a corporation of the unauthorized acts of an agent. A ratification may be inferred from corporate acts, inconsistent with any other supposition than that the corporation intended to adopt and own the acts done in their name (*Conn. Supreme Ct.*, *Howe* agt. *Keeler*, 27 *Conn.*, 538).

Thus, a ratification may be inferred from the acquies-

cence of the directors or other governing body of the corporation; from the fact that after the facts have been brought to their knowledge they have taken no measures to show dissent ; from the fact that they did not question the accounts submitted; from the fact that they kept the proceeds or retained the benefits of the unauthorized acts of the agent (*Houghton* agt. *Dodge*, 5 *Bosw.*, 326 ; *Woodbridge* agt. *Proprietors of Addison*, 6 *Vt.*, 528 ; *Hoyt* agt. *Thompson's Exrs.*, 19 *N. Y.*, 208 ; *Olcott* agt. *Tioga R.R. Co.*, 27 *N. Y.*, 546 ; *Walworth Co. Bank* agt. *Farmers' Loan and Trust Co.*, 16 *Wis.*, 629 ; *Farmers' and Citizens' Bank* agt. *Sherman*, 6 *Bosw.*, 181).

But in all these cases the board of directors or trustees had full knowledge of the facts, and I have been unable to find a single case in which a subsequent ratification has been inferred without proof that the board of directors or trustees had such knowledge. On the contrary, it has been held in several cases that it must be shown by the party asserting such ratification that the resolution or acts of the corporation, or of their directors or trustees, relied on as constituting the ratification, were performed with a full knowledge of all the material facts necessary to an understanding of their rights (*Cal. Supreme Ct.*, *Blen* agt. *Bear River*, &c., *Co.*, 20 *Cal.*, 602 ; *Md. Ct. of Appeals*, *Cumberland Coal*, &c., *Co.* agt. *Sherman*, 20 *Md.*, 117).

And where the ratification by a corporation of the unauthorized contract of their agent consisted in their having received the consideration of the contract, it was held that it must be shown that the corporation, through its proper officer or officers, knew the terms of the contract, and on what account the consideration was by them received (*Md. Ct. of Appeals*, *Penn.*, &c., *Steam Nav, Co.* agt. *Dandridge*, 8 *Gill. & J.*, 248 ; *Corn Exch. Bank* agt. *Cumberland Coal Co.*, 1 *Bosw.*, 437).

As the evidence in this case unmistakably shows that, with the exception of the president, none of the trustees

ever had any knowledge or notice of the unauthorized trans-actions which took place between said president and the plaintiffs until about the commencement of this action, and that the said unauthorized acts have not in any manner been ratified by an affirmative corporate act, the mere fact that the president, probably in extenuation of his otherwise inexcusable conduct, testified that he originally advanced about $30,000 to the company, a great portion of which he repaid to himself out of the proceeds of the drafts issued by him, cannot, in the absence of proof that the company had recognised this indebtedness, that the loan had become due, that the said president had actually given credit to the company for the proceeds received, and that the company had notice thereof, be construed into a ratification on the part of the company on the ground of acquiescence.

Finally, it seems to me equally clear that the defendants cannot be held liable upon the ground that the conduct of the corporation was such as to create a well-founded belief in the plaintiffs that the president had either a general or special power to issue and negotiate the drafts. There was no proof that the president had been in the habit of borrowing of the plaintiffs in the name of the company, and that such loans had been ratified by the company, or that it was his custom of borrowing of other persons; that his act, in this respect, had been ratified by the company, and that these facts were known to the plaintiffs at the time they made the loan (*Martin* agt. *Great Falls Manu-facturing Co.*, 9 *N. H.*, 51). The evidence did not disclose any corporate acts from which plaintiffs could have inferred such authority; but it showed that plaintiffs, because they had neither prior dealings nor any acquaintance with the company, accepted the drafts, almost exclusively, upon the faith of the individual guarantee of the president. Nor can the plaintiffs invoke the application of the rule laid down in the *North River Bank* agt. *Aymar* (3 *Hill*, 262), *Gris-wold* agt. *Haven* (25 *N. Y.*, 601), and *N. Y. and N. H. Rail-*

*road. Co.* agt. *Schuyler* (34 *N. Y.*, 73), namely, that where the principal has clothed his agent with power to do an act, upon the existence of same extrinsic fact, necessarily and peculiarly within the knowledge of the agent, and of the existence of which the act of executing the power is itself a representation, a third person dealing with such agent in entire good faith, pursuant to the apparent power, may rely upon the representation, and the principal is estopped from denying its truth to his prejudice. There is no evidence showing, or tending to show, that the plaintiffs have been misled by the exercise of any such apparent power. The referee erred, therefore, in finding, as matters of fact, that the drafts were drawn by the company, and that the company failed to provide plaintiffs with the necessary funds to the extent claimed by them. For this reason the judgment cannot be sustained against the defendants. I have looked at the question whether the judgment can not be sustained against the defendant Simon Stevens, but have become satisfied that, as to him, it must also be reversed. He is sued as trustee, sought to be charged as a trustee, and the whole case was tried on the assumption of his liability as a trustee for misconduct in office. No attempt was made to charge him upon his guarantee. It was no part of plaintiff's cause of action, and he cannot be charged upon his guarantee, except by a change of the entire complaint. Plaintiffs should have moved for leave to amend their complaint in this respect, and given an opportunity to the defendant Stevens to litigate that question.

The judgment appealed from should be reversed as to all the defendants, and the order of reference vacated, and a new trial ordered, with costs to appellants, to abide the event.

MONELL, J.—I concur.

McCUNN, J.—I concur