June Term,
1861.

WALWORTH
Co. BANK
v.
FARMERS' L. &
T. Co. et al.
14  325
109  497

WALWORTH COUNTY BANK VS. FARMERS' LOAN AND

TRUST COMPANY and others.

Action to recover for the taking and conversion of a lot of railroad ties. Answer, a general denial; and property in the defendant. Before the taking, the president of the railroad company had executed a bill of sale of the ties to the plaintiff in part payment of a debt due to it from the company; and proof was introduced for the purpose of showing that about the same date he also delivered to the plaintiff possession of the ties under the sale. The defendant introduced proof for the purpose of showing a *prior* title in itself derived from the railroad company. The charter of the railroad company provided that its affairs should be managed by a board of directors who should appoint one of their number president, but did not prescribe the powers of the president. Without passing upon any other question present- ed by the evidence, it was *held*, 1. That the president of the railroad com- pany had not authority, by virtue of his office merely, to make the sale of the ties. 2. That he was not authorized to sell them by virtue of a previous resolution of the board of directors appointing him the fiscal agent of the company, and authorizing him " to purchase such equipments for the road as the board might direct, to purchase all necessary materials for the car shops and to contract for all necessary transportation of the company." 3. That possession of the ties acquired under an invalid contract of sale, was not of itself sufficient to enable the plaintiff to maintain an action for their taking and conversion.

APPEAL from the Circuit Court for *Racine* County.

Action for the taking from the possession of the plaintiff, and the conversion of railroad ties alleged to belong to the plaintiff. Answer, 1. A general denial. 2. Property in the *Farmers' Loan & Trust Company*, of which the other defendants were employees. Trial by the court with- out a jury, in September, 1860. The plaintiff gave in evidence the following bill of sale of the property in con- troversy: "Racine, April 29, 1859. Walworth County Bank, bought of the Racine & Mississippi Railroad Com- pany 25,000 railroad ties at 15 cents each, $3,750. Re- ceived payment, HENRY S. DURAND, President. The chat- tel mortgagees assent to the above sale. HENRY S. DURAND, Agent." The plaintiffs also read in evidence two resolu- tions passed by the directors of said railroad company, April 26th, 1855, and April 3, 1856, the substance of which is stated in the opinion of the court. The cashier of the plain-

June Term, 1861

WALWORTH CO. BANK
v.
FARMERS' L. & T. Co. et al.

tiff testified that at the date of the above bill of sale, the plaintiff had a claim against the Racine & Mississippi Railroad Company for more than $12,000; that on or about that date the plaintiff bought the ties and took a delivery of them, and soon after the purchase and about the 1st of April, and certainly before the 5th of May, 1859, the ties were counted and placed by the plaintiff in charge of its agents; that at the time of the sale the ties were lying near the line of the Lake Shore Railroad, and about five miles from the line of the Racine and Mississippi Railroad; that Durand was at the time the "acting business man" for the R. & M. R. R. Co. in making sales; that at the time the bill of sale was made there was no indorsement or credit given on the note held by the bank; and that the note had been indorsed by directors of the bank and they had been released by non-protest of the note, but the bank held certain mortgages and other collateral securities. H. S. Durand testified that he was and had been for six years president of the R. & M. R. R. Co.; that he was the "acting financial man" for the company in making sales for it; that he sold to the plaintiff the ties mentioned in the bill of sale, at the time of its date; that the bargain was made by him with Mr. Allen, the president of the bank; that the ties were cut upon land mortgaged to the bank; that the bank claimed them, and for that reason they were sold to it for only the cost of cutting them; that the land was chiefly valuable for the timber, and cutting the ties lessened the value of the security; that the price of the ties was to apply on the debt owing to the bank; that he should think the delivery of the ties to Mr. Allen was made about the date of the bill of sale, and that since the time of the sale the R. & M. R. R. Co. had not exercised any acts of ownership over them; that they had been got out for the use of the railroad company, and were piled up near the Lake Shore Railroad, with reference to a special arrangement to enable the R. & M. R. R. Co. to get them off; that the intention was to sell all the ties, but if there were more than 25,000, to sell only that number; that the memorandum at the foot of the bill of sale referred to a mortgage given by the R. & M. R. R. Co.

June Term, 1861.

WALWORTH Co. BANK v. FAMERS' L. & T. Co. et al.

to Fisher, Allen, Durand and others, to indemnify them for indorsements; that he intended to refer to the two chattel mortgages given by the company to Fisher, Allen and others; that the mortgagees were not precisely the same in both mortgages; could not say positively, but thought that both mortgages covered the ties in question; that he had authority in writing from Allen and Fisher to release the mortgages, and verbal authority from all the other mortgagees to act for them; the authority was to take the property, dispose of it, and pay the liabilities of the company to the bank; that this authority was given at a meeting of all the mortgagees except one, at the time the first mortgage was given; thinks that by the by-laws of the company the president had charge of all its property; that no particular officer besides the president had charge of the ties referred to; does not think that the chattel mortgagees had any possession of the ties at the time of the sale, but that the railroad company was in possession of them; that the books of the railroad company were in the possession of the defendant, which had refused to give them up. Mr. Allen testified that he thought the mortgagees referred to in the memorandum at the foot of the bill of sale, consented to the sale of the ties; that three of them were present at the sale and at the delivery of the ties; that witness and Durand, on the day of the sale, went up the Lake Shore road, and as they went along, Durand pointed out the ties, and when they came back next day the cars stopped where the ties were piled, being 250 odd piles of 100 each (besides loose ones) within 40 or 60 rods of each other on the railroad track; that he did not count the ties; that Durand, Fisher and he examined them, and witness took possession of them for the plaintiff; that the land from which the ties were taken had been previously mortgaged to the bank, and, that the land was depreciated thereby as much as the value of the ties; and that the debt due to the bank was for money loaned to the R. & M. R. R. Co. to aid in building its road, and used for that purpose. The plaintiff also gave in evidence 1. A portion of the by-laws of the R. & M. R. R. Co., which directed that the president of the company should have a general supervision of

June Term,
1861.

WALWORTH
CO. BANK
v.
FARMERS' L. &
T. CO. et al.

its affairs, and that it should be his duty, as the chief executive officer of the company, to see that the orders and resolutions of the board of directors should be carried into effect. 2. A resolution adopted by the directors of said company May 11, 1853, appointing H. S. Durand and M. M. Strong, agents and attorneys of the company, either jointly or severally, to effect loans for it, and thereupon "to execute and deliver in the name of the company such bonds, contracts or agreements as they or either of them should deem advisable, and to pledge, hypothecate or mortgage any bonds, securities or other property, to secure such loans;" and authorizing them or either of them "to bind said company in any manner and upon any terms which they should deem advisable, for the purpose of raising money in any manner for said company." 3. A resolution passed by the directors March 27, 1858, authorizing the president of the company to execute and deliver to H. S. Durand, William C. Allen, William T. Goodhue, John Rinewalt, D. P. Holt, Alex. McClurg, Fisher, Keep, Talcott & Co., and Elisha Raymond, the bond of the company in the penalty of $500,000, with condition that the company would save them and each of them harmless from all loss and damage on account of any indorsement or liability which they or either of them had made or incurred in behalf of the company; and also to execute to said party a chattel mortgage upon all the personal property and rolling stock of the company, to secure the performance of the condition of said bond.

There was also evidence tending to prove the value of the ties, and that they were taken by *Thomson* and *Harris*, who were employees of the defendant.

The defendant introduced a large amount of documentary evidence to prove its title to the ties under sundry mortgages and a deed of surrender executed to it by the Racine & Mississippi Railroad Company before the date of the bill of sale executed by Durand, as the president of the company, to the plaintiff; but as the cause was determined in this court upon the failure of the plaintiff's proof, without passing upon the title of the defendant, the proof introduced by it is omitted. The finding of the circuit court was in fa-

vor of the plaintiff, and judgment was rendered against the defendants for the value of the ties.

June Term, 1861.

*Strong & Fuller*, for appellants, argued that the president had no authority, *ex officio*, to make a sale of the ties (Angell & Ames on Corp., §§ 298-9); that it was no part of the ordinary business of the railroad company to sell the materials which they had obtained for the construction of the road. *Fulton Bk. vs. N. Y. & Sharon Canal Co.*, 4 Paige, 133; *Stow vs. Wyse*, 7 Conn., 219; *Hoyt vs. Thompson*, 1 Seld., 321; *Hallowell & Augusta Bank vs. Hamlin*, 14 Mass., 180); and that no power to make the sale was conferred upon Durand by the resolutions given in evidence. [The argument of counsel as to the title of the *Loan & Trust Co.* is omitted].

WALWORTH
CO. BANK
v.
FARMERS' L. &
T. CO. et al.

*Cary & Pratt*, for respondent, insisted that the president of the company had power to make the sale by virtue of the resolution appointing him the fiscal agent of the company; that if it were not so, it was competent for the company to ratify the act, and the ratification would be inferred from its acquiescence; and that the possession of the ties by the plaintiff was sufficient to sustain the action against a wrong doer, and give the plaintiff a right to recover against any one but the owner or those claiming under him.

*By the Court*, COLE, J. It is conceded that it was incumbent on the respondent to make out a title to the railroad ties mentioned in the complaint, to enable it to recover. For the purpose of showing title in the property to be in the bank, the memorandum of sale of the 29th of April, 1859, was introduced in evidence. That memorandum was signed by Henry S. Durand, as president of the railroad company, and was probably sufficient provided Durand was authorized on the part of the corporation to execute it. It is contended that Durand, by virtue of his office as president of the railroad company, was fully authorized and empowered to sell and dispose of any of the personal property of the company in payment of its debts. We are unable to say what are the precise powers and duties of the president of a railroad company over its property and concerns. But we do not think he can, by virtue of the power inherent in his office, dispose

November 2.

June Term,
1861.

WALWORTH
CO. BANK
v.
FARMERS' L. &
T. CO. et al.

of the personal property of the corporation for any purpose at his pleasure, without special authority from the board of directors. If so, we cannot see why he might not dispose of the entire rolling stock of the company if he saw fit. It is probable that the general custom is, for the board of directors to clothe the president of the road with extensive authority over its management and concerns; but the fact that this power is conferred either by some article in the by-laws or by a special resolution of the board, shows conclusively that it is not inseparable from the office. See *The President, Directors &c. of the Hallowell & Augusta Bank vs. Hamlin et al.*, 14 Mass. R., 178; *Dispatch Line of Packets vs. Bellamy Manufacturing Co.*, 12 N. H. R., 205; *Stowe vs. Wyse*, 7 Conn. R., 214; *Fulton Bank vs. N. Y. & Sharon Canal Co.*, 4 Paige, 127; *Whitwell vs. Warner et al.*, 20 Vt., 425; *Hoyt vs. Thompson et al.*, 1 Seld., 320. The act of incorporation provides that the affairs of the company shall be managed by a board of directors, who shall be chosen as therein prescribed. The board were to appoint one of their number president, and were to have power to make such by-laws and rules, not inconsistent with the constitution and laws of the state, as might be necessary for the well ordering of the affairs of the corporation. Sec. 4, chap. 392, p. 592, Laws of 1852. The charter does not anywhere prescribe the powers and duties of the president, and they were undoubtedly such as were conferred upon him by the board of directors.

It was insisted that Durand had authority to sell and dispose of the property in dispute, by virtue of two resolutions of the board of directors, one passed April 26th, 1855, the other April 3d, 1856. By the former resolution Marshall M. Strong and Henry S. Durand were appointed the fiscal agents of the company, and as such were authorized and empowered to sell and negotiate any securities owned by the company, and make loans for the benefit of the same, and to purchase any materials needed by the company. The latter resolution appoints the president as fiscal agent, and authorizes him to purchase such equipments for the road as the board might direct, and to purchase all necessary materials for the car shop, and contract for all necessary transportation

of the company. Neither of the above resolutions author-
ized the president to sell the personal property of the cor-
poration. By the former, Durand was to act in conjunction
with Strong; while by the latter, he was only authorized to
purchase such equipments for the road as the board might
direct, and to purchase all necessary materials for the car
shop, and to make contracts for the transportation of the
company. This is far from giving the president authority
to sell and dispose of any personal property he might see fit.
We therefore conclude that Durand had no authority, either
*ex officio* or under the resolutions of the board of directors, to
sell the railroad ties.

The judgment of the circuit court must be reversed, and
a new trial ordered.

DIXON, C. J. No doubt possession of personal property
by the plaintiff at the time of the alleged injury is ordina-
rily sufficient to enable him to maintain trespass or trover
as against all persons except the owner or those claiming
under him. But when in order to prove possession it be-
comes necessary for the plaintiff to show a transfer of the
property from some former owner to himself, and he attempts
to do so and fails, the right of action fails also; for it then
appears, not that the defendant is liable to him for the value,
but to some other person who is the owner in fact.