## THE CHICAGO AND NORTH-WESTERN RAILWAY COMPANY VS. JAMES and another.

AGENCY. RAILROADS: *Power of director or vice-president of railway company to sell lands, etc.—Evidence of such power.*

1. Under the principles which usually govern such corporations, neither a director nor vice-president of a railway company is empowered to bind it by his acts, such as appointing agents to protect its lands, or to sell the lands or timber.

2. In an action where the defendant claimed rights growing out of the exercise of such a power by a director and vice-president of the plaintiff company, *held*, that the authority of such officer must be shown by the same kind of evidence that would be required in the case of any other agent; as by resolution of the board of directors, by verbal appointment made under their authority, or by proof that they had knowledge of and acquiesced in the action of the officer.

APPEAL from the Circuit Court for *Winnebago* County. Action for damages for a conversion by defendants to their own use of a lot of pine logs alleged to have been cut on plaintiff's land and to have been its property. The defense was, that defendants bought the logs of one Weatherby, by whom the logs were cut (in the winter of 1865–6) under a license from James McGillan, who acted as agent for the plaintiff. On the question whether McGillan had authority to grant the license, the evidence on the part of defendants was as follows: E. C. Goff: "I am timber agent of the plaintiff. P. H. Smith appointed me. James McGillan was before me, and C. Foote before him. I know this only by rumor; have no knowledge that McGillan acted as timber agent." P. H. Smith: "I reside in Chicago, and am vice-president and one of the directors of the plaintiff company, and have been since 1859." *Question:* "Was James McGillan ever the timber agent of the company?" *Answer* (against plaintiff's objection): "We never had any officer

known as timber agent. We have had an agent to look after the land of the company, and to prevent trespasses. Mr. Goff is such agent now; Mr. James McGillan preceded Goff, and Mr. Foote preceded McGillan. Foote acted about two years; McGillan about the same. McGillan ceased to act in the winter of 1866. He had nothing to do except during the winter; was employed by the day. He acted by my appointment." The licenses from McGillan to Weatherby were then put in evidence. Weatherby, testified that for a year or two before taking these licenses he had understood that McGillan was plaintiff's agent; did not know of his selling timber; did not know, of his own knowledge, of Foote's doing so. Mr. Fitzgerald testified that he bought logs on plaintiff's land from Foote in 1862, and took it off in the winter of 1863; and afterwards the plaintiff recovered a judgment against him for the amount, the complaint being for stumpage sold by plaintiff to him. The judgment roll in said action was put in evidence, and the complaint therein was verified by one Strong as assistant superintendent of the plaintiff company. N. Leavitt testified that he bought stumpage on plaintiff's land from McGillan in the winter of 1864, and had never heard anything about it from the company. A written direction (to McGillan?) to sell to one Hunter stumpage on a specified tract of plaintiff's land, if not already sold, which direction was entered in Hunter's memorandum book, and was signed by P. H. Smith, was also read in evidence, and Hunter testified: "When I went to Smith I asked him who was agent for plaintiff's land; he said, McGillan; I told him I wanted to buy; he said Weed was bargaining for them, and if any was left, I could buy of McGillan." Another witness: "In 1864, I bought timber on plaintiff's land from McGillan; paid him for it, and cut it that year. P. H. Smith referred me to McGillan; said I could get the land I wanted, he presumed, if it was not

already taken." Another: "In 1865–6, I purchased timber of McGillan on lands of plaintiff, and paid him therefor. I heard he was agent and went to see him; nobody called on me a second time for pay. I bought more than once." Another: "In 1862, I purchased timber on plaintiff's land of C. D. Foote, and paid him for it; took it off in 1862 and 1863; never heard any complaint about it. I got R. Campbell to see P. H. Smith for me at Chicago; he did so, and Smith wrote me, and Foote has our letters." All this evidence was received against plaintiff's objections. For the plaintiff, P. H. Smith testified: "C. D. Foote acted under my direction; he was authorized to protect plaintiff's lands from trespasses. He had no authority to sell land or stumpage, except when there was application to us for purchases in particular cases. He was employed to go on lands to see if any trespasses had been committed, and warn people off. I never knew of his making any sales, except in three or four cases, and then he had special permission. Employed McGillan simply to protect lands against trespasses, and no sales permitted except in particular authorized cases. I had no knowledge McGillan was making sales, except as authorized in special cases, and as soon as I knew of it, I discharged him. I remember of one or two more coming to me about buying land. I presume I referred them to McGillan for the purpose of having him advise me as to condition of land, its value, etc., that sale might be authorized if thought best; never authorized the sale to Weatherby." C. D. Foote: "P. H. Smith employed me; I was not authorized generally to sell stumpage; think I did in three cases; in each case Smith instructed me to sell."

The court gave the jury the instruction recited in the first sentence of the opinion. Verdict for the defendants; new trial denied; and plaintiff appealed from a judgment on the verdict.

*Gabe Bouck*, for appellant, contended, among other things, that the acts of a director or other officer of the plaintiff company will not bind it, unless within the scope of his ordinary powers or some special agency. *Soper v. Buffalo &c. R. R. Co.*, 19 Barb., 310; *National Bank v. Norton*, 1 Hill, 572; *L. & F. Ins. Co. v. Mechanic F. Ins. Co. of N. Y.*, 7 Wend., 31; *Stephenson v. N. Y. & H. Railroad*, 2 Duer, 341; *Hoyt v. Thompson*, 5 N. Y., 320; *Hallowell &c. Bank v. Hamlin*, 14 Mass., 178; *Hartford Bank v. Barry*, 17 id., 95.

*E. P. Finch*, for respondents, cited in support of the instructions given, *Warren v. Ocean Ins. Co.*, 4 Shep., 439; 3 Met., 282; 9 Porter, 210: 3 Gratt., 215; 34 N. H., 278.]

DIXON, C. J. The court instructed the jury, "that if P. H. Smith is a director or vice-president of the company, and, in point of fact, in the actual charge of the lands of the company, appointing agents to protect them from trespasses, or to sell the lands or timber, as they shall be advised, and the jury in the absence of testimony, may presume that Smith had authority to the extent to which he assumed to act." The language of the instruction is somewhat inaccurate and ambiguous, and there are doubtless some mistakes either with the writer or printer. The words "and the jury," at the beginning of the last clause, probably should read "then the jury." But with this correction, the ideas of the judge are not very clearly expressed. As we understand the instruction, however, it was in substance, either that Mr. Smith, as director or vice-president of the company, had power, *ex officio*, to take charge of the lands, and to appoint agents to protect them from trespasses, or to sell them or the timber, as they might be advised; or else, that being such director or vice-president, without such power *ex officio*, yet if he assumed to have it and did take actual charge of the

lands and appoint agents to protect them from trespasses, or to sell them or the timber, the jury might presume, in the absence of testimony, that he had authority to the extent to which he thus assumed to act. Neither proposition is in point of law correct. We are not informed as to what the peculiar powers or duties of a director or vice-president of this company may be, by its charter, nor do we care to examine. It is enough that no such extraordinary powers are claimed or shown to have been conferred by the charter. We assume that a director possesses the powers usually given in such cases; and that he is authorized to act as a member of the board in all matters touching the business concerns of the corporation and the management of its affairs; but that, when not acting as a member of the board, he has no authority to represent the corporation, or to bind it by his acts, unless authorized by some proper action of the board, in which case he acts precisely like any other agent of the corporation, and upon the same authority. And so, too, of the vice-president. We consider that his duty, in addition to that imposed upon him as a director, is to preside at meetings of the board in the absence of the president. These principles with regard to the general powers and duties of such officers, are elementary. In *Walworth County Bank v. Farmers' Loan and Trust Company*, 14 Wis., 325, it was held by this court that the president of a railroad company had no power, by virtue of his office merely, to make a sale of the property of the company; and his is certainly an office of more dignity and importance than that of a vice-president or director. See that case, and the authorities there cited, and also Angell and Ames on Corporations, §§ 299 to 302, inclusive.

As to the other proposition, its incorrectness is manifest from what has already been said. If Mr. Smith had no *ex officio* power, then his authority as agent must be shown by

some competent testimony, the same as that of any other agent; and it cannot, in the absence of testimony, be presumed from the mere fact that he assumed to act as agent. Such authority may be shown in various ways : as by resolution of the board of directors; or by verbal appointment under their authority, or with their approbation; or by proof that Mr. Smith took actual charge of the lands, and did appoint agents to sell them, or the timber, with the knowledge of the directors, who tacitly acquiesced or took no action to prevent it. These, or some such evidence of authority, must be given before the company can be bound. The mere facts that Mr. Smith was director or vice-president and did the acts, are not sufficient. Previous authority must be shown, or actual knowledge of the transactions must be brought home to the directors. The case of *Bridgeport Bank v. New York & New Haven R. R. Co.*, 30 Conn., 231, is inapplicable, for the reason that there the act complained of was the act of an actual agent of the company, acting within the scope of his official power. The same observation may be made of several of the other cases cited by counsel for the defendants. The rule in such cases is, that corporations, like natural persons, are bound, and bound only, by the acts and contracts of their agents done and made within the scope of their authority.

As the judgment must for these reasons be reversed, and a new trial awarded, it becomes unnecessary for us to examine any of the other numerous exceptions noted in the bill.

*By the Court.*—Judgment reversed, and a *venire de novo* awarded.