GEORGE H. HYDE, Respondent, v. WILLIAM LARKIN, Appellant.

Kansas City Court of Appeals, March 10, 1888 and April 15, 1889.

1.   **Corporation :** POWER OF PRESIDENT AND MANAGER OF A MINING CORPORATION TO TRANSFER ASSETS.  The president and general manager of a mining corporation borrowed money of plaintiff, its treasurer, to pay the hands of the company, and as security therefor assigned him the company's account on defendant without any authority from the directory to borrow the money or assign the account.   *Held*, such power or authority does not belong to the president and manager of such corporation, *virtute officii*, and without some warrant from the charter, the directory or the custom and usage of the corporation, such assignment transferred no title to the plaintiff.

2.   —— : RATIFICATION : KNOWLEDGE.  It not appearing that the directory knew the account was assigned, or the money used in paying the hands was borrowed, there was no ratification.

---

Hyde v. Larkin.

---

*On rehearing.*

1. **Corporations :** RATIFICATION OF UNAUTHORIZED ACT OF GENERAL AGENT. Before a corporation can be said to have ratified the unauthorized contract of its agent in receiving the consideration of a contract, it must be proved that the corporation, through its proper officer, knew the terms of the contract and received the money on that account.

2. ————: WHEN KNOWLEDGE OF OFFICER, NOT IMPUTED TO. As in this case, of the seven directors, only two knew of the transaction, the president and treasurer, the latter acting for himself in receiving it, and the former, who did the unauthorized act not communicating his knowledge or attending any meeting of the directors before whom it was brought up, such knowledge cannot be imputed to the corporation.

*Appeal from the Jackson Circuit Court.*—HON. TURNER A. GILL, Judge.

REVERSED AND REMANDED.

*Lathrop & Smith*, for appellant.

(1) The president of Star Coal and Mining Company had no power by virtue of his office to sell the personal or other property of the company or to assign the account sued upon, even if it were to pay a debt due from the company to plaintiff. *Bank v. Farmers' L. & T. Co.*, 14 Wis. 329 ; *Asher v. Sutton*, 3 Am. & Eng. Corp. Cases ( 342) 344–6 ; *Olney v. Chadsey*, 7 R. I. ( 224 ) 228 ; *Gashwiler v. Willis*, 33 Cal. ( 11 ) 18, 24 ; *Railroad v. James*, 22 Wis. 198 ; *Titus & Schudder v. Railroad*, 37 N. J. Law, 102 ; *Hoyt v. Thompson*, 1 Seld. ( N. Y.) 333 ; *Hodge's Ex'r v. Bank*, 22 Gratt. 59 ; *Brouwer v. Appleby*, 1 Sand. 158 ; *Spyker v. Spence*, 8 Ala. 340 ; *Winsor v. Bank*, 18 Mo. App. 671–5 ; *Luse v. Railroad*, 25 Am. Rep. 509 ; s. c., 6 Oregon, 125 ; Morawetz on Priv. Corp. ( 2 Ed.) 536, 537, and authorities cited. (2) Transferring the assets is a corporate act, and can only be done by the board of directors. *City of St. Louis v. Clemens*, 43 Mo. 404 ; R. S. 1879,

sec. 930. (3) Section 731 of Revised Statutes, 1879, relied upon by plaintiff, has no application, and does not pretend to be anything, except a declaratory statute. The law is the same without it. *Preston v. Lead Co.*, 51 Mo. 47. (4) The Star Coal and Mining Company had no power to borrow money anyway. *Bank v. Young*, 37 Mo. 398. (5) If it had such power, the president could not exercise it without authority from the board of directors. *Crum's Appeal*, 66 Pa. St. 476. (6) When the president of a private corporation has such power, it is conferred either by by-law or vote of board of directors. No such by-law or vote was shown or claimed in the case at bar. Such authority, however, must be proved by legal evidence. *Bank v. Farmers' L. & T. Co.*, *supra; Bank v. Hamlin*, 14 Mass. 180 ; *Titus & Schudder v. Railroad, supra; Railroad v. James, supra; Bliss v. Kaweah C. & I. Co.*, 65 Cal. 504. (7) A by-law of the corporation authorizing its president to act as its business and financial agent would not authorize him to transfer or pledge the accounts, much less an oral appointment. *Luse v. Railroad, supra.* (8) The directors or officers of a corporation cannot mortgage or convey property to themselves to secure a debt or for any other purpose, and such a mortgage or conveyance is void. The assignment in the case at bar was by president to treasurer. *Harwood v. Lbr. Co.*, 26 N. W. Rep. 184. (9) There is a difference between the powers of a president of an ordinary business corporation and the powers of a bank cashier

*Henry Wollman*, for respondent.

(1) Morawetz, in his now famous work on Private Corporations, Vol. 1 (2 Ed.) sec. 509, page 475 in the text, says : "The extent of the powers of agents of a well defined class, such as presidents, directors or cashiers, is determined largely by general custom, of which the courts will take judicial notice, and parties dealing

with such agents are entitled to assume that they possess all the powers which are usually accorded to agents of the class to which they belong." *Carlyle v. McElrath*, 3 Sandf. N. Y. 179 ; *Bank v. Fox*, 3 Blatch. 431 ; *Patton v. Moses*, 49 Me. 255 ; *Cabot v. Given*, 45 Me. 144 ; *Irwin v. Bailey*, 8 Fed. Rep. 421 ; *Castle v. Belfast Co.*, 72 Me. 170 ; *Recond v. Railroad*, 15 Nev. 177 ; *Railroad v. Bastian*, 16 Md. 501 ; R. S. 1879, sec. 731 ; *Southgate v. Railroad*, 61 Mo. 89 ; *Turner v. Railroad*, 51 Mo. 501 ; *Bank v. Gilstrop*, 45 Mo. 419 ; *Chamberlin v. Min. Co.*, 20 Mo. 96 ; *Bulkley v. Briggs*, 30 Mo. 452 ; *Fire Co. v. Seminary*, 52 Mo. 480. (2) Having used and retained the money he got as the "proceeds" of his "unauthorized" act, the corporation ratified his act, and his act is binding upon it, even though he exceeded his authority in the first place. *Preston v. Lead Co.*, 51 Mo. 47 ; *Bank v. Fricke*, 75 Mo. 183 ; *Drug Co. v. Robinson*, 81 Mo. 26, and cases cited.

*Lathrop, Smith & Morrow*, for appellant on rehearing.

(1) The mere fact that the Star Coal and Mining Company received money from Hyde, and that it was used to pay employes of said company, does not constitute a ratification. All this may have been done without knowledge, and was in this case done without knowledge of any officer or director except those immediately concerned in the deal. Thomp. Trial, sec. 1382 ; *Pennsylvania Co. v. Dandridge*, 8 Gill & J. 314. (2) When the evidence is doubtful and may admit of different interpretations, and when it can justly lead to no safe or satisfactory conclusion, a ratification ought not to be presumed. Story Ag., sec. 253 ; *Bank v. Jones*, 8 Texas, 828 ; Thomp. Trial, sec. 1382.

*Henry Wollman*, for respondent on rehearing.

(1) Appellants apparently assume that the only way a corporation can ratify is through its directors. That is not the law and no decisions bear this out. *Preston v. Lead Co.*, 51 Mo. 47; *Bank v. Fricke*, 75 Mo. 183; *Ten Broek v. Winn*, 20 Mo. App. 19; *Holmes v. Board of Trade*, 81 Mo. 141; *Buford v. Keokuk N. L. P. Co.*, 69 Mo. 613; *Watson v. Bigelow*, 47 Mo. 413; *Chouteau v. Allen*, 70 Mo. 329; *Bank v. Schumburg*, 38 Mo. 226; *Tyrell v. Railroad*, 7 Mo. App. 299; *Green v. Railroad*, 82 Mo. 659. (2) The courts have not even allowed a corporation to plead that an act done on its behalf exceeded its charter powers, until it returned whatever consideration it received. *Railroad v. Dow*, 19 Fed. Rep. 388; *Buford v. Keokuk N. L. P. Co.*, 69 Mo. 613.

ELLISON, J.—The facts necessary to be stated to an understanding of the contested point in this case are, that the Star Coal and Mining Company was a domestic corporation engaged in mining and selling coal. That defendant Larkin owed the company an account for coal, the sum of five hundred and sixty dollars. That the corporation had a president and general manager who borrowed a sum of money of plaintiff and, as security therefor, assigned to him the account against defendant. That the money so borrowed of plaintiff was used by the president in paying hands engaged in the service of the corporation.

It appears that the board of directory never authorized the money to be borrowed or the assignment of the account. It does not appear that they knew that the money was borrowed, or that the account was assigned. It does not appear that it was the usage, or that it was customary for the president to borrow money, or assign the accounts of the company, nor does it appear that he ever did so, save in this instance.

Under this state of facts the question is, did the assignment transfer the title to the account to the plaintiff?

If it did so, it must be by reason of the power and authority of the president and general manager *virtute officii*, to assign the choses in action or assets of a corporation of this character. In order that the act of officers or agents may bind a corporation, when not expressly authorized, the act "must be such as is in the line of their duty or agency." *Winsor v. Bank*, 18 Mo. App. 665.

The corporation is bound "for all such acts of the agent as are *usually* performed in that particular class of business." Morawetz on P. Cor., sec. 587. The authority of some agents, such as cashiers and tellers of banks, is fixed ·by general custom, of which the courts will take judicial notice. In other instances, the scope of the agent's authority is determined either by the terms of the appointment, by the nature of the company's business, and by the practice which has been acquiesced in by the company. Morawetz on P. Cor., sec. 590. In *Hazelton Coal Co. v. Megargel*, 4 Barr. 324, Chief Justice GIBSON, after stating that there was no proof of any special authority, says: "And what is the authority of the president of a company incorporated, not for purposes of banking or any object connected with currency, but for mining and marketing coal? The powers of such an officer are much more restricted than the operations of a banking one." In the case of the *New York Iron Mine v. Bank*, 39 Mich. 651, it was insisted by counsel that the general agent of a mining corporation as a mattter of law, by virtue of his appointment, had authority to bind it by commercial paper and that the court should take notice of his authority as it would of the authority of a bank cashier; but the court held that issuing promissory notes is not a power necessarily incident to the conduct of the business of mining. That it was a power so susceptible of abuse

that the law wisely left it to be conferred or not, as the directory might determine. I am firmly persuaded that the president, general agent or manager of a mining corporation cannot, by virtue of his office *merely*, assign the assets of the corporation. He must have some warrant from the charter, the directory or the custom and usage of the corporation. It is certainly the safer and more conservative rule, and commends itself to sound reason. If it were not so, such officer might act in disregard of the board of directors and might by the mere power inherent in his office, transfer the entire assets of the corporation. The proposition is supported by the weight of authority. *Whitewell v. Warner*, 29 Vt. 425; *The Chicago & N. W. Railroad v. James*, 22 Wis. 194, 198; *Stow v. Wise*, 7 Conn. 214; *Sherman v. Fitch*, 98 Mass. 59; *Lydeborough Glass Co. v. Mass. Glass Co.*, 111 Mass. 315; *Kraft v. Freeman Printing Co.*, 87 N. Y. 628; *Asher v. Sutton*, 31 Kan. 286; *Walworth v. Farmers' L. & T. Co.*, 14 Wis. 325; *Hoyt v. Thompson*, 1 Selden, 320; *Despatch Line of Packets v. Mfg. Co.*, 12 N. H. 205, 228.

"It is true" as is stated in *Winsor v. Lafayette Co. Bank, supra*, "that a corporation may by a course of conduct with its officers and the public give them authority, and confer upon them powers, they would not have as such officers, but for the usages of the corporation."

In this case there is no proof of any thing of this nature. Many of the authorities cited by plaintiff have reference to banking corporations and as such I do not consider them applicable to the case at bar. As has been stated implied powers delegated to a bank cashier are exceptional. It results in part at least, "from the universal necessities of commerce." *Ringling v. Kohn*, 6 Mo. App. 333.

The case of *McKernan v. Lenzen*, 56 Cal. 61, has been urged as authority directly in point. Most of the legal propositions advanced in that case are very generally recognized as sound, though some of them are

liable to be misunderstood and may, perhaps, be reasonably interpreted as running counter to established rules.

We cannot assume that assigning the choses in action, or transferring the assets of the Star Coal and Mining Company, was in the line of the duty of the president and manager of the company, or that such acts are usually performed by the general managers of such corporations. Such power or authority does not belong to the president and manager of such a corporation, *virtute officii*.

The cases cited from this state have been examined and are not considered as trenching on the views presented.

We find no evidence of ratification by the corporation. There could be no ratification without knowledge and it does not appear that the board knew the account was assigned or even that the money used in paying the hands was borrowed.

The judgment, with the concurrence of the other judges is reversed and the cause remanded.

ELLISON, J.—on rehearing.

It may be conceded that by using the money, borrowed of plaintiff, in payment of its hands, the corporation became liable to plaintiff in an action by him for the amount of the loan, notwithstanding the act of the president in borrowing was unauthorized. But that does not reach the question before us; that question is whether the unauthorized assignment of the assets of the corporation to secure the loan has been ratified? In order to have been ratified it must have been known to the corporation. Knowledge of payments, made to the hands with borrowed money, is knowledge that in borrowing that money, the agent has made an unauthorized transfer of assets to secure it. If the ratification by the corporation, of the unauthorized contract of its agent, consists in its having received the consideration of the

Hyde v. Larkin.

contract, it must be proved that the corporation, through its proper officer or officers, knew of the terms of the contract, and on what account the money was by them received. Angell & Ames Corp., sec. 304; *Twelfth St. Market Co. v. Jackson*, 102 Pa. St. 269; 8 Gill & J. 248, 323, 324; *Bell v. Cunningham*, 3 Peters, 69; *First Nat. Bank v. Kimberland*, 16 West Va. 555, 579–583.

In this case, of the seven directors, from whom the officers were selected, none knew of the transfer, but the president who did it, or the treasurer who received it. The latter's knowledge in acting for himself could not, of course, be chargeable to the company. *Johnson v. Shortridge*, 93 Mo. 227. An agent cannot, at the same time, serve two masters whose interests are antagonistic. *DeSteiger v. Hollington*, 17 Mo. App. 382, 388.

The knowledge of the president, who did the unauthorized act, and who has not been shown to have communicated it, or attended any meeting of directors before whom it was brought up, cannot be imputed to the corporation, from the fact that if the knowledge, that an agent has of his own unauthorized act, can be imputed to the corporation, there need never arise any question of ratification. All that would be required would be to show that he did the act and that he has never repudiated it. *Twelvth St. Market Co. v. Jackson*, 102 Pa. St. 269; *First Nat. Bank v. Kimberland, supra; Blen v. Bear River & A. W. & N. Co.*, 20 Cal. 602.

The judgment is reversed and the cause remanded. SMITH, P. J., concurs; GILL, J., not sitting.