## CITY ELECTRIC STREET RAILWAY COMPANY *v.* FIRST NATIONAL EXCHANGE BANK.

### Opinion delivered February 8, 1896.

CORPORATION—AUTHORITY OF OFFICERS.—The president and secretary of a corporation have no inherent power to execute negotiable notes in its name, nor will their authority be presumed from the fact merely that they have exercised it.

CORPORATION—POWERS OF OFFICERS.—The powers of the president and secretary of a business corporation to act for the corporation must be delegated and special, under Sand. & H. Dig. secs. 1330-5, conferring the management of their business affairs upon "not less than three directors."

CUSTOM—JUDICIAL NOTICE.—A usage to be good, and of which the courts will take judicial notice, must be general, and of such long standing as to have become part of the law itself.

CORPORATE RECORDS—WHEN BINDING.—Corporations are not bound by false and simulated entries upon their records unless, knowing that they are such, they have neglected to correct them, and some innocent third party has acted upon the faith of them, to his prejudice.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

| 62 | 33 |
| 67 | 551 |

| 62 | 33 |
| 74 | 561 |

| 62 | 33 |
| 180 | 67 |
| 181 | 204 |

| 62 | 33 |
| 84 | 453 |

| 62 | 33 |
| 86 | 288 |

| 62 | 33 |
| 189 | 175 |

*John McClure* for appellants.

The answer presented a good defense, and the demurrer should have been overruled.

1.    Persons dealing with officers of corporations are put upon notice as to the powers of such officers.    Morawetz on Corp. sec. 691.    Under secs. 1330, 1335, Sand. & H. Dig. the management of the affairs of corporations are by law placed *under the absolute control of a majority of the board of directors, when convened according to the by-laws.*

2.    Our statute makes it a crime for the president and secretary to issue a note in the name of the company, unless authorized by the charter or by-laws. Sand. & H. Dig. sec. 1604.    If issued without such authority, the notes are simply forgeries.    The notes in suit were issued in violation of a statute, and no court will enforce them.    Field on Corp. sec. 218; 145 U. S. 421, 427 ; 41 Ark. 339.

3.    This case must not be confounded with cases where the officers had the power to execute negotiable paper for some purpose, and, instead of making it for that purpose, made it and used it for another.

4.    There is no presumption that officers of corporations act within the scope of their powers.    5 Wheat. 326.    The notes could not be read in evidence, no authority to execute them having been shown.    5 Wend. (N. Y.) 567.    And, in the absence of such showing, the holder cannot recover.    46 Iowa, 106 ; 27 Ill. App. 315 ; 46 N. J. 238 ; 52 Barb. (N. Y.) 411 ; 1 Saxt. (N. J.) 550 ; L. R. 2 Exch. 159 ; 26 Minn. 51.

5.    That the holder got the paper before maturity makes no difference, if the persons issuing the paper were without power.    7 Wall. 667 ; 3 Bos. (N. Y.) 600. There can be *no innocent holder* of void negotiable paper. 41 Ark. 339 ; 145 U. S. 421–7.

*Ratcliffe & Fletcher* for appellee.

1. The company had the *power to issue the notes.* The president and secretary *were in the habit of executing promissory notes when authorized* by the board of directors, and the *bona fides* of the holders for value before maturity and without notice is conceded. In such case, the rule is that the parties have the right to presume that all prerequisites and conditions have been complied with, and they will be protected as innocent holders. 2 Morawetz on Corp. secs. 610, 611; 10 Wall. 604; 41 N. J. Eq. 531; 55 Fed. 265. See also 1 Mor. Corp. sec. 538, and note 1; 2 *id.* sec. 602; 58 N. W. 943; 39 Cent. L. J. 143; 93 Cal. 300, 312; 1 Dan. Neg. Inst. sec. 381, 386, 389, 390, 391–2; Taylor on Priv. Corp. secs. 204; 1 Wall. 175; 101 U. S. 181; 11 Wall. 459; 14 *id.* 296; 57 Fed. 47–53; 65 *id.* 341; 58 N. W. 943; 98 N. Y. 553; 48 Ark. 454. But, if we admit that it was the duty of the holders to make inquiry, certainly nothing more could have been required beyond an examination of the record, which showed the authority of the officers. 24 N. E. 384.

2. The free and untrammeled circulation of negotiable paper is universally favored by the courts, and, to successfully attack the title of an indorsee for value before maturity, *knowledge of facts* which would convict him of *bad faith* must be shown. He owes no duty of active inquiry. 2 Wall. 122, 123; 21 Wall. 360; 42 Ill. App. 584; 18 S. W. 622; 46 Mo. App. 440; 52 N. W. 340. Proof of negligence or omission to make inquiry which common prudence would have dictated is not sufficient to defeat his right. *Ib.* Nothing but fraud or *mala fides* is sufficient to charge him with notice of infirmities. 50 Iowa, 600; 66 Fed. 263; 20 How. 343; 102 U. S. 442; 139 U S 166; 76 Ill. 530; 34 N. Y. 247; 35 *id.* 65; 54 N. Y. 288; 67 Pa. St. 59; 29 Iowa, 258;

10 Bush, 504; 63 Mo. 167; 31 Ark. 129; 26 N. E. 979; 16 S. W. 209; 28 N. W. 901; 118 Ind. 586; 21 N. E. 316; 29 Pac. 130; 46 Mo. App. 440; 52 N. W. 819; 34 Barb. 436.

3. The corporation cannot plead ignorance of the resolution. It was the duty of the directors to examine the books and records, and they are conclusively presumed to know all that they would disclose. 110 U. S. 7–15; 56 Fed. 967; 38 Ark. 17.

WOOD, J. The bank sued the railway company on a negotiable promissory note purporting to have been executed by the company, payable to H. G. Allis and Geo. R. Brown, and indorsed by them before maturity for value, and delivered to the First National Bank, and by it indorsed and delivered to the plaintiff.

The answer, in substance, sets up that the defendant was a corporation, organized under the laws of Arkansas (chap. 47, Sand. & H. Dig.); that the note was executed by the president and secretary of the defendant corporation, without any authority from or knowledge of its board of directors; that the charter and by-laws of the corporation gave no such authority; that the president and secretary had the records to show that they were duly authorized to issue the note, but that such record entry was false, and the directors had no knowledge of such entry until long after the maturity of the note; that the directors had never ratified the unauthorized acts of the said officers; that the said secretary and president had never indulged in a course of dealing between the corporation and third parties, so as to lead strangers to believe that they (the president and secretary) had power to issue negotiable paper in the name of the company, nor had the corporation ever received any consideration for said notes. A demurrer to this answer was sustained; and, the defendant re-

fusing to plead further, judgment was rendered against it for the amount of the note, which this appeal seeks to reverse.

The answer presented a good defense, unless it can be said (1) that the authority of the president and secretary to issue the note in suit must be presumed from the fact that they have exercised it, or (2) that the corporation is bound by the false record showing that the directors had conferred such authority upon the president and secretary.

1. It may be stated as a general proposition that the president and secretary of a corporation are not empowered to bind it by their signature to commercial paper, unless the authority is expressly conferred by the charter, or given by the board of directors. They have no inherent power to execute negotiable notes in the name of the corporation. Tied. Com. Paper, sec. 121; Cook, Stock, etc., sec. 716; *McCullough* v. *Moss,* 5 Denio, 567; 4 Thompson, Corp. sec. 4619; *Life & Fire Ins. Co.* v. *Mechanic Fire Ins. Co.,* 7 Wend. 31; *Hyde* v. *Larkin,* 35 Mo. App. 365; Pierce, Railroads, 32–34; *Walworth County Bank·*v. *Farmers' Loan, etc., Co.,* 14 Wis. 325; 1 Morawetz, Corp. sec. 537; *Titus* v. *Railroad Co.,* 37 N. J. L. 98–102; *Wait* v. *Nashua Armory Ass'n,* 23 Atl. Rep. 77, and authorities there cited; *Nat. Bank* v. *Atkinson,* 55 Fed. Rep. 465.

*Authority of officers of corporation.*

Where the authority of the president and secretary to bind the corporation is challenged, as it has been by the answer in this case, that authority should be shown by the proof, and not be presumed as a matter of law. *Mount Sterling, etc., Co.* v. *Looney,* 1 Metc. (Ky.) 550; *Bacon* v. *Miss. Ins. Co.,* 31 Miss. 116; 4 Thomp. Corp. 4619; *Craft* v. *South Boston R. Co.,* 150 Mass. 208; *First Nat. Bank* v. *Hogan,* 47 Mo. 472; *Dabney* v. *Stevens,* 40 How. Pr. 341; 1 Waterman, Corp. 445; *Hallowell, etc. Bank* v. *Hamlin,* 14 Mass. 180; *Chicago*

*etc. R. Co.* v. *James*, 22 Wis. 194 ; *Bliss* v. *Kaweah C. & I. Co.*, 65 Cal. 504.

We are aware that there are authorities *contra*, and counsel for appellee have cited us to *Exchange National Bank* v. *Oregon Pottery Co.*, 55 Fed. Rep. 265, where it is held that, "if the president and secretary sign a negotiable promissory note, their authority is inferred from their official relation." This case is analogous, the question being presented (as in the case at bar) on demurrer to an answer which negatived the authority of the president and secretary to issue such paper. But the court, to sustain its position in that case, cited only two cases, viz.: *Merchants' Bank* v. *State Bank*, 10 Wall. 644 ; and *Crowley* v. *Mining Co.*, 55 Cal. 273. In *Merchants' Bank* v. *State Bank*, *supra*, the court use this language : "It should have been left to the jury to determine whether, from the evidence as to the powers exercised by the cashier, with the knowledge and acquiescence of the directors, and the usage of other banks in the same city, it might not be fairly inferred that the cashier had authority to bind the defendant." True, it is also said "that if the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them." But we submit that the broad dictum of the latter quotation was unnecessary for the determination of the question before the court, in view of the fact that there was shown a usage of other banks, and a usual course of dealing with the knowledge and acquiesence of the directors. It was this very language, doubtless, which caused the learned circuit judge in *American Nat. Exch. Bank* v. *Oregon Pottery Co.*, 55 Fed. *supra*, to hold, as a matter of law, that the authority of the president and secretary would be presumed from the fact that they had exercised it.

So, also, in the California case cited to support the ruling in 55 Fed., *supra*, it was admitted that the president, whose authority was being questioned, "was the superintendent and general managing agent, having full control of the business of the corporation." The difference, therefore, between those cases and the one at bar, and the one in which they were cited, is too obvious for further notice. The language above quoted from Judge Swayne in 10 Wallace was first used by him in *Gelpck*e v. *City of Dubuque*, 1 Wall. 175, and it has been repeated in *Supervisors* v. *Schenck*, 5 Wall. 772; *City of Lexington* v. *Butler*, 14 Wall. 296; *Tod* v. *Union Land Co.*, 57 Fed. Rep. 47–53; and *Nat. Bank* v. *Young*, 41 N. J. Rep. 531. The facts of these cases did not justify such a sweeping declaration of law, for an examination will show that, in some of the cases, municipal or county bonds were in controversy, which showed upon their face authority for their issue; and in others that the contracts or transactions made or performed by the agent of the corporation were such as had been frequently or usually made or performed by him before, in the course of the business of the corporation; or that the corporation had received some benefit from the unauthorized act. But the doctrine announced in *American Exch. Nat. Bank* v. *Pottery Co.*, 55 Fed. Rep. 265, is unsound, and not supported by the weight of authority. Besides, the principle it seeks to establish is in conflict with the doctrine announced by the Supreme Court of the United States in *Western Nat. Bank* v. *Armstrong*, 152 U. S. 346, where it was held "that the vice-president of a bank, however general his powers, could not exercise such a power, unless specially authorized so to do, and that persons dealing with the bank were presumed to know the general powers of the officers."

Mr. Morawetz, in speaking of these dicta in those cases where they have been incautiously used, said:

" They must be considered in view of the facts of the particular cases in which they were made. Taken alone, as statements of a principle or rule of law, they are certainly not in accordance with the decisions, and cannot be supported upon any sound principle." 2 Morawetz, Priv. Corp. sec. 608.

The rule that " if the president and secretary sign, their authority is inferred from their official relation," provided they might have had power under any circumstances to issue such paper for the corporation, is begging the question, where the authority itself is challenged. This rule, too, ignores a fundamental principle of the law of agency, whether applied to natural persons or corporations; for corporations can only act through agents. It is said by Mr. Mechem in his work on Agency (sec. 289) that "every person dealing with an agent is bound to ascertain the nature and extent of his authority. He must not trust to the mere presumption of authority, nor to any mere assumption of authority by the agent." Judge Miller, of the Supreme Court of the United States, in *The Floyd Acceptances*, 7 Wall. 666, said : "The person dealing with an agent, knowing that he acts only by virtue of a delegated power, must, at his peril, see that the paper on which he relies comes within the power under which the agent acts. And this applies to every person who takes the paper afterwards; for, said he, "it is to be kept in mind that the protection which commercial usage throws around negotiable paper cannot be used to establish the authority by which it was issued." This language is exceedingly apposite to the case at bar. It must be remembered that the answer in this case denies *in toto* the authority of the president and secretary to issue negotiable paper. Hence, this· case bears no analogy to that line of cases where the authority exists for some purposes, but is exercised for different purposes than that for which it was conferred.

Where the authority to issue negotiable paper exists at all in the president and secretary, then the innocent holder would have the right to assume that it was properly and lawfully issued.

Our statute for the incorporation of business corporations expressly confers the management of their business affairs upon "not less than three directors." Sand. & H. Dig. secs. 1330–1335. Another section makes it a felony for the president or secretary of a corporation to "wilfully and designedly sign with intent to issue a promissory note without authority from the charter or by laws of such corporation." Sand. & H. Dig. sec. 1604. Surely the legislature would not have made it a felony for these officers to issue negotiable notes, if they had such power *virtue officii*. From the above provisions, it appears that the president and secretary of corporations are not general agents. Whatever power they may have to act for the corporation at all in business matters must be delegated and special. We note, *en passant*, that the statute defines the duty of the secretary to be that of "keeping the books of the corporation." Sand. & H. Dig. sec. 1332. See Taylor on Corp. sec. 236; 1 Beach, Priv. Corp. sec. 202, and authorities cited in note; *Life, etc., Ins. Co.* v. *Ins. Co.* 7 Wend. 31.

*Power of corporate officers to issue notes.*

Those cases which hold that the president and secretary, or any other officer of a corporation, will be presumed to have authority where they have exercised it, provided, under any circumstances, it might have been conferred upon them, proceed upon the theory of a usage or custom from which authority will be implied. But such a theory cannot be maintained as to electric street railways in this state, for the reason that no such usage as to them exists. A usage, to be good, and of which the courts will take judicial notice, must be general, and of such long standing as to have become a part

*When custom noticed judicially.*

of the law itself. *Mussey* v. *Eagle Bank*, 9 Metc. 313; *Merchants' Bank* v. *State Bank*, 10 Wall. 604 (dissenting opinion).

The incorporation of electric street railways in the state of Arkansas is of comparatively recent date, and such corporations do not yet exist to any general extent throughout the state. Moreover, it can scarcely be conceived how a usage of the kind mentioned could have sprung up, in view of our statutory provisions, and especially that one making it a felony for the president or secretary of a corporation to wilfully and designedly issue promissory notes without authority from the charter or by-laws. Sand. & H. Dig. sec. 1604. Manifestly, if the broad dictum of Mr. Justice Swayne in 10 Wall., *supra*, is the law, then that numerous class of individuals who have invested their means in corporate property would have no protection whatever from the dishonest acts of their agents, whom they have intrusted with office. But the rule, as we have declared it, while protecting the shareholders, is just to the innocent holder; for in each case it may be shown by any competent evidence that the corporation is liable (1) where the board of directors or the by-laws have conferred upon the president and secretary the authority to issue negotiable paper; (2) where the corporation, through its directors, has permitted these officers to habitually do such an act in the course of its business—in other words, has clothed them with the apparent authority to so act; (3) where the directors have ratified the unauthorized acts of its officers; (4) where the corporation has received the proceeds or any benefit from the transaction. But all of these things were negatived in the answer. Hence it was sufficient to call for the proofs.

<span style="float:left">Conclusive-<br>ness of corpo-<br>rate records.</span> 2. The entries upon the books of the corporation are *prima facie* evidence against it, as admissions. The records and books of a corporation become conclusive

evidence against it when they are the books and records of the corporation, and the entries upon them have been duly made by the recording officer. But corporations are not bound by false and simulated entries upon their records in any case unless, knowing that they are such, they have neglected to correct them, and some innocent third party, having had proper access to them or knowledge of them, has been misled thereby to his prejudice. But a corporation is not bound to a third party by a false entry upon its records, unless such party, not knowing the entry was false, has acted upon the faith that the entry was the true record of the proceedings. This is the holding of the Supreme Court of Massachusetts in *Holden* v. *Hoyt*, 134 Mass. 181, and authorities there cited.

Reversed, with directions to overrule the demurrer.

---

[NOTE.—As to the powers of the president of a corporation see note to *Wait* v. *Nashua Armory Asso.* (N. H.) 14 L. R. A. 356. [Rep.]